RECEIVED
JAN 21 2005
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Civil No. 01-1122(JNE)**

GARY STARR, individually, and as the father and natural guardian of Gabrielle Cotton, a minor,

Plaintiff,

vs.

METRO SYSTEMS, INC., a Minnesota corporation, and DEBORAH MASANZ,

Defendants.

**PLAINTIFFS' TRIAL MEMORANDUM**

Plaintiff Gary Starr, both individually as the responsible party for the medical expenses of his minor daughter, Gabrielle Cotton, and on her behalf, has brought the instant action under the COBRA amendments to ERISA, 29 U.S.C. Sec. 1132 and 1161, et seq., for damages, statutory penalty, interest, and attorney's fees. Defendants have failed to provide Plaintiff Cotton with a notice of her separate and distinct continuation rights under COBRA as a qualified beneficiary under the Defendants' ERISA medical plan ("Plan"), after the termination of employment of Gary Starr on or about February 24, 2000. Plaintiffs have incurred medical and hospital expenses totaling approximately $116,000, which are covered under the Plan, and which the Defendants have failed and refused to pay.

Plaintiff will establish that he received no notice of COBRA continuation rights either for himself or for his daughter and that no such notice was given by the employer or plan administrator. Alternatively, the purported COBRA notice that Defendants claim to have mailed, is insufficient under 29 U.S.C. Sec. 1132 and 1161, as a matter of law.

**LEGAL STANDARDS**

Continuation coverage under an ERISA-qualified group health plan after an employee's termination is governed by the Consolidated Omnibus Budget Reconciliation Act of 1986

SCANNED
JAN 21 2005
U.S. DISTRICT COURT MPLS

(COBRA), 29 U.S.C. Sec.Sec. 1161 through 1167. Section 1161 requires that employers of 20 or more employees having a group health plan are required to provide that each qualified beneficiary is entitled to elect continuation coverage under the plan:

> Plans must provide continuation coverage to certain individuals
> (a) In general. The plan sponsor of each group health plan shall provide, in accordance with this part, 29 U.S.C. Sec. 1161, et seq., that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

29 U.S.C. Sec. 1161(a).

> The term "qualified beneficiary" means, with respect to a covered employee under a group health plan, any other individual who, on the day before the qualifying event for that employee is a beneficiary under the plan – (ii) as the dependent child of the employee.

29 U.S.C. Sec. 1167(3)(A)(ii).

29 U.S.C. Sec. 1165 defines the Election Period for continuation coverage as follows:

> (1) Election Period. The term "election period" means the period which –
>
> (A) begins not later than the date on which coverage terminates under the plan by reason of a qualifying event,
>
> (B) is of at least 60 days' duration, and
>
> (C) ends not earlier than 60 days after the later of –
>
> (i) the date described in subparagraph (A), or
>
> (ii) in the case of any qualified beneficiary who receives notice under section 1166(a)(4) of this title, the date of such notice.

Under 29 U.S.C. Sec. 1166(a)(4)

> [T]he administrator shall notify –
>
> (A) in the case of a qualifying event described in paragraph (1), (2), (4), or (6) of section 1163 of this title, any qualified beneficiary with respect to such event.

Termination of employment is a qualifying event in paragraph (2) of Section 1163.

**1. <u>Burden of proving by sufficient documentation that COBRA notice was given is on the employer</u>.**

ERISA imposes a duty on both the employer and the plan administrator to maintain records that are sufficient to show that it complied with COBRA's notice requirements:

> Section 1059 requires employers to maintain records "sufficient to determine the benefits due or which may become due to [its] employees." Stanton's COBRA right to continue his health care coverage and notice thereof are benefits due him. Accordingly, in its role as employer, Fowler Trucking has a statutory duty to maintain records to determine if notice was given pursuant to Sec. 1166. However, Stanton's claim is based upon Fowler Trucking's actions in its role as an administrator of the plan: Under Sec. 1166(a)(4), the administrator, not the employer, has a duty to provide COBRA notice to the employee. Section 1059 only requires the employer, not the administrator, to keep records. However, 29 U.S.C. Sec. 1027 (1985) imposes a recordkeeping requirement on administrators. Accordingly, as an administrator, Fowler Trucking is required under Sec. 1027 to maintain records evidencing the notice given pursuant to Sec. 1166(a)(4).

Stanton v. Larry Fowler Trucking, Inc., 52 F.3d 723, 727 (8th Cir. 1995).

Because ERISA imposes recordkeeping requirements on plan administrators and employers, an employee's testimony that he never received notice required under COBRA shifts the burden to the employer to prove that it complied with the notice requirements of 29 U.S.C. Sec. 1166. Stanton, supra, at pp. 727-729 ("Accordingly, we agree with the district court that Stanton's testimony that he never received the notice required by § 1166(a)(4) shifted the burden to Fowler Trucking to prove that it complied with the requirements of § 1166"); Chesnut v. Montgomery, 307 F.3d 698 (8th Cir. 2002) (citing Stanton and citing, with approval, McDowell v. Krawchison, 125 F.3d 954, 958 (6th Cir. 1997) ("[defendants] were the party bearing the burden of proof")); Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 947 (8th Cir. 1999) ("There is a rebuttable presumption that a properly mailed document is received"); Phillips v. Riverside, 796 F.Supp. 403, 408 (E.D. Ark. 1992) ("testimony of non-receipt, standing alone, would be sufficient to support a finding of non-receipt; such testimony is therefore sufficient to rebut the presumption of receipt").

Because of ERISA's record keeping requirements, the absence of records sufficient to show that a COBRA notice was given is probative of the fact that such notice never occurred. Stanton, supra, at p. 728 n. 5, 729 ("In fact, absence of these records is probative of the fact that such notice never occurred.")

The duties of the plan administrator are fiduciary and must be exercised exclusively for the benefit of the plan beneficiaries:

> An ERISA fiduciary "shall discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries . . . (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries," 29 U.S.C. Sec. 1104(a)(1), and must exercise its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use," 29 U.S.C. Sec. 1104(a)(1)(B). ERISA beneficiaries may obtain appropriate equitable relief to redress a fiduciary's breach of these duties. See 29 U.S.C. Sec. 1132(a)(3); Varity Corp. v. Howe, 516 U.S. 489 (1996).

Fink v. Dakotacare, 324 F.3d 685, 690 (8th Cir. 2002).

**2. Persons Entitled To COBRA Notice.**

All qualified beneficiaries are entitled to separate notice of COBRA continuation rights upon occurrence of a qualifying event. 29 U.S.C. Sec. 1167(3)(A); Chesnut v. Montgomery, 307 F.3d 698, 703 (8th Cir. 2002) ("as a qualified beneficiary, [spouse] was entitled to separate notice of his right to elect continuation coverage"); Fink v. Dakotacare, 324 F.3d 685, 691 (8th Cir. 2002) ("ceasing to be a covered dependent child is a second qualifying event that entitles the child to notice of her right to extend *her* continuation coverage until 36 months after the date of the initial qualifying event.") (Emphasis in original); Lincoln General Hospital v. Blue Cross/Blue Shield, 963 F.2d 1136, 1139 (8th Cir. 1992) ("assuming that at the same time notice was also given to [divorced spouse] … this notice is sufficient to inform [divorced spouse] of the effects of COBRA on her health plan"); McDowell v. Krawchison, 125 F.3d 954 (6th Cir. 1997) (notice to covered employee not deemed notice to other qualified beneficiaries).

**3. Contents of Notice.**

**A. Sufficient information to enable an intelligent decision is required.**

The notice required under COBRA must provide sufficient information to the qualified beneficiary to enable an intelligent decision about whether or not to pay for continuation coverage. Lincoln General, supra, at p. 1140 ("notice of COBRA continuation rights [must] explain[] benefits thoroughly enough to enable an intelligent decision whether to elect continuation coverage," adopting the reasoning of Meadows v. Cagle's, Inc., 954 F.2d 686 (11th Cir. 1992)); Chesnut v. Montgomery, 307 F.3d 698, 702 (8th Cir. 2002):

> In Lincoln Gen. Hosp. v. Blue Cross/Blue Shield, 963 F.2d 1136, 1140 (8th Cir. 1992), we held that a plan administrator satisfied its notice obligation by providing information that "adequately informed [the qualified beneficiary] of the coverage she was entitled to receive and the money that she owed in order to maintain this coverage." Similarly, in McDowell v. Krawchison, the Sixth Circuit stated that "the notice given must be sufficient to allow the qualified beneficiary to make an informed decision whether to elect coverage." 125 F.3d at 958. We agree that these general standards are appropriate.

Whether the notice under Sec. 1166 is sufficient should be determined from the perspective of the qualified beneficiary, whose need for information may be different from that of the covered employee or other beneficiaries. Id.

**B. A notice containing incorrect information does not comply with Sec. 1166.**

If the notice contains incorrect information about the beneficiary's COBRA rights, it is not sufficient as a matter of law. Lincoln General Hospital, supra, at p. 1140; Chesnut, supra, at p. 702; Van Hoove v. Mid-America Bldg. Maintenance, 841 F. Supp. 1523, 1533-34 (D.C.Kan. 1993) (notice erroneously stating the period of continuation coverage, election period, and failing to notify of termination of coverage for failure to pay premium is insufficient).

**C. A dependent residing with a covered employee is entitled to a COBRA notice sufficient to explain continuation rights from her perspective.**

ERISA, as amended by COBRA, is remedial legislation which should be liberally

construed to effectuate Congressional intent to protect participants in employee benefit plans. McGee v. Funderberg, 17 F.3d 1122, 1125 (8th Cir. 1994).

Notice of the covered employee's COBRA rights, directed solely to the covered employee, is insufficient notice to the dependent child residing with the covered employee. 29 U.S.C. Sec. 1166(c); Fink, supra. Congress could have provided in Sec. 1166 or elsewhere, that a notice of COBRA continuation rights given to a parent of a dependent residing with the employee is deemed to be notice to the dependent. However, Congress specifically did not do so. Instead, Congress made such notice effective only as to the dependents residing with a **spouse** of a covered employee. Such specificity as to notification evidences a Congressional intent to exclude dependents living with covered employees under the axiom of construction "expressio unius est exclusio alterius." As the Eighth Circuit stated in McGee v. Funderberg, 17 F.3d 1122, 1125 (8th Cir. 1994): "we cannot assume that Congress simply forgot [to do so] . . . Again, absent clear Congressional expression to the contrary, we will not narrow COBRA's broad scope."

COBRA is to be construed under the "expressio unius est exclusio alterius" axiom. McGee, id (CHAMPUS coverage is not a triggering event for purposes of termination of COBRA continuation coverage).

ERISA health plans are construed under this axiom of construction. Provident Life & Accident Ins. Co. v. Williams, 858 F. Supp. 907 (W.D.Ark. 1994).

Defendants' health plan also construes COBRA to require a separate election form to the dependent of the covered employee:

> When a qualifying event occurs, your Employer must give you the necessary COBRA election form within the time period specified by law. You must complete and return this form to your Employer within 60 days of the later of:
> - The date you or your Dependent would lose coverage; or
> - **The date your or your Dependent receives the COBRA election forms.**

Complaint, ¶ 15; Answer, ¶ 15. COBRA is a statute about which reasonable persons could come to conflicting conclusions regarding its import, and an equitable estoppel claim is cognizable under ERISA. Geissal v. Moore Medical Corp., 114 F.3d 1458 (8th Cir. 1997), rev'd on other grounds, 524 U.S. 74 (1998).

**4. Remedies.**

**A. Plaintiffs' damages are the medical expenses that are covered under the plan less premiums.**

Under 29 U.S.C. Sec. 1132(a)(1)(B) a civil action may be brought by a beneficiary to recover benefits due to her under the terms of his plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan.

When a sufficient notice of COBRA election rights under Sec. 1166 has not been given, or is ineffective to allow an intelligent decision, a beneficiary has coverage and continuation rights under the plan until proper notice and election forms are received, including rights to payment of claims under the Plan. Lincoln General, supra, at p. 1139 (employer bound to provide coverage if the administrator fails to provide COBRA notice); Smith v. Borden, Inc, 1995 U.S.Dist. Lexis 19728 (W.D. Mo. 1995) (measure of damages is medical bills minus premiums and co-pays); Phillips v. Riverside, 796 F.Supp. 403 (E.D. Ark. 1992) (employer liable for medical bills less deductibles and premiums); McDowell v. Krawchison, 125 F.3d 954 (6th Cir. 1997) (failure to provide COBRA notice requires providing coverage); Meadows v. Cagle's, Inc., 954 F.2d 686, 692-3 (11th Cir. 1992) (continued coverage until proper notice is provided retroactive to the qualifying event).

Between August 17, 2000 and October 3, 2000, Plaintiff Gabrielle Cotton and Plaintiff Gary Starr, as her father, incurred medical expenses in the total amount of $116,728.65, for which coverage is provided under the Plan in the amount of $116,178.86, and which the

Defendants have refused to pay. Undisputed Fact No. 13. Premiums that accrued between February 24, 2000 and October 3, 2000 are 8 months @ $338.75 in the alleged COBRA notice, Masanz Exhibit 2, or a total of $2,710. Plaintiff Cotton is entitled to judgment against the defendants for breach of fiduciary duty and for coverage under the Plan in the amount of the covered medical expenses or $113,468.86.

**B. Plaintiffs are entitled to Declaratory Relief.**

Declaratory relief is available when an effective COBRA notice has not been given. 29 U.S.C. Sec. 1165(a)(1)(C); Meadows, supra. In fact, the plan so provides. Therefore, Plaintiff Cotton is entitled to declaratory relief that her COBRA election rights are subsisting until she receives such notice and election forms. To the extent that declaratory relief is not requested in the Complaint, Plaintiff has previouslymoved the Court in its summary judgment motion, and hereby moves the Court to amend the Complaint to so allege.

**C. Plaintiffs are entitled to interest on their liquidated claim.**

Interest at the legal rate (6% per annum per Minn. Stat. Sec. 334.01) from and after October 3, 2000 to February 1, 2005 on $113,468.86 is $29,470.77.

**D. Plaintiffs are entitled to a statutory penalty.**

ERISA provides that the plan administrator shall be liable for a penalty for failure to provide notice under 29 U.S.C. Sec. 1166(a)(4) in an amount up to $100 per day. A total of 1777 days have elapsed from April 23, 2000 (60 days after termination) to February 1, 2005.

The purpose of the penalty is both deterrence and compensation. Chesnut, supra. Two factors which the Court may examine are the degree of prejudice and the nature of the conduct. Kerr v. Charles F. Vatterott & Co., 184 F.3d 938 (8th Cir. 1998). Prejudice is not required although it is a factor. Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223 (8th Cir. 2002). Conversely, a penalty may be imposed even though there has been no bad faith. Phillips, supra.

The financial status of the employer is a factor that the Court may consider. Villagomez v. AT&T Pension Plan, 1991 U.S.Dist LEXIS 1788 ($100 per day penalty in view of AT&T's financial status).

The maximum penalty of $100 per day should be imposed totaling $177,700 through February 1, 2005, against Defendant Masanz as the Plan administrator, and against the Metro Systems, Inc. under respondeat superior.

Dated: January 18, 2005

Respectfully submitted,

Robert J. Bruno (#12415)
Attorney for plaintiffs
1601 E. Highway 13, Suite 107
Burnsville, MN 55337
(952)890-9171