**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Civil No. 01-1122 (JNE)**

---

Gary Starr, individually, and as the father and natural guardian of Gabrielle Cotton, a minor,

Plaintiff,

vs.

Metro Systems, Inc., a Minnesota corporation, and Deborah Masanz,

Defendants.

**DEFENDANTS' POST TRIAL MEMORANDUM**

---

______The above-entitled matter came before the Honorable Joan N. Erickson for a court trial on February 1, 2005 to determine whether Defendant Metro Systems, Inc. satisfied its statutory obligation to notify Starr of his right to continue receiving medical coverage under COBRA for himself and dependent daughter, Gabrielle Cotton. In other words, the issue is whether Defendants sent a COBRA notice to Starr in a good-faith manner reasonably calculated to reach Starr. If so, Defendants met their obligation, regardless of Plaintiff's denial that he received it.

As explained below, the evidence at trial in fact established that Defendant Deborah Masanz prepared the appropriate COBRA notice and election form and properly mailed these forms to Plaintiff Starr using normal mailing procedures. Thus, evidence, legal authority and presumptions require a finding that Gary Starr received the notice which reasonably advised him of the right to continue medical coverage but that he simply chose to forego such coverage. Because Defendants satisfied their statutory obligations, judgment should be entered in their favor.

## ARGUMENT

**I. The Evidence Shows That Deborah Masanz Created A COBRA Letter And Election Form On March 3, 2000 And That She Mailed These Forms To Gary Starr Following Her Usual Mailing Practice.**

Masanz testified at trial that she uses a template form provided by Great West in order to create COBRA letters and election forms and that she used that template on March 3, 2000 in order to create on her computer the notice and election forms directed to Starr. Specifically, Masanz explained that she inserted the dates, address, and premium amount (based on her conversation with the agent) applicable to Starr and then added to the election form the particular provision which allows a dependent to select coverage.

Masanz then testified that her normal practice was to immediately print such forms once they had been created, to personally place them in an envelope, and to apply the necessary stamp or postage. Masanz would then take the envelope to the front of Metro Systems, Inc.'s office and place it in the receptacle from which all mail was picked up daily by the United States Postal Service. The notice and election form were sent to Starr by first class mail; a procedure which other courts have found satisfies the notice requirements of 29 U.S.C. §1166(a). *See e.g., Myers v. Kings's Daughters Clinic*, 912 F. Supp. 233, 236 (W.D. Tex. 1996), *aff'd*, 96 F.3d 1445 and *Jachim v. KUTV, Inc.*, 783 F. Supp. 1328, 1332-34 (D. Utah 1992) (finding an employer satisfies its statutory obligations to provide COBRA notice by sending notice via first class mail to the employee's last known address and regardless of employee's denial of receipt). Masanz likewise testified that she created a letter on September 5, 2000 addressed to Starr, printed it, inserted it in an envelope, stamped it and placed it at the front office for pickup by the United States Postal Service.

Not only was the manner in which Defendants sent notice to Starr sufficient but, contrary to Plaintiffs' arguments, the evidence shows that Metro Systems' record keeping was adequate and,

in fact, Metro Systems has a record of the notice sent to Starr. Thus, *Stanton v. Larry Fowler Trucking, Inc.,* 52 F3d 723, 727 (8th Cir. 1995), a case Plaintiffs previously relied upon in their unsuccessful summary judgment motion, is factually distinguishable since, unlike in *Stanton*, Defendant Metro Systems not only mailed the notice to Starr rather than handing it to him but Metro Systems also has a record of the notice which was mailed to Starr.

This case is, as explained in Defendants' Memorandum of Law Opposing Plaintiffs' Motion for Summary Judgment, more similar to the facts considered in *Roberts v. Nat'l Health Corp.*, 963 F. Supp. 512 (D. S.Ca. 1997), *aff'd*, 133 F. 3d 916 (4th Cir. 1998). In that case, as in this one, the employer presented evidence of the established procedures it used to automatically provide COBRA notice to employees. And, despite the employer's inability to produce a copy of the actual letter sent to the employee and the employee's denial of receipt, summary judgment was nevertheless granted for the employer. As the court explained, "Roberts' only means of rebuttal is to argue that she did not receive the letter. As the cases cited above indicate, this is insufficient, and NHC has met its burden of proving that it complied with COBRA's notice provisions." *Id.* at 515.

Although there was testimony that other COBRA notices were created by Masanz after March 3, 2000, Masanz explained that she was unable to locate the original letter and election form on her desktop. She therefore tried to recreate those documents prior to this litigation, thereby resulting in there being notices that are different than the one she actually sent to Starr. Masanz's testimony on this issue was fully supported by forensic computer expert, Mark Lanterman, who testified that in his opinion there was no way Masanz could have found the original documents on her computer because of the fact that she had deleted them. They had, however, been sent to the computer's server. More importantly, it is simply irrelevant and insignificant whether other notices were sent on dates subsequent to March 3, 2000 and the Court should not be sidetracked by that

argument. The issue is whether Defendants' Exhibit No. 2 was created and sent on March 3, 2000 and, as explained herein and established at trial, the evidence shows that it was both created and mailed to Starr on that date.

## II. Uncontradicted Expert Testimony Further Verifies That Masanz Created The COBRA Notice And Election Form On March 3, 2000.

In order to find that the requisite COBRA notice and election form were created, the Court need not rely only upon the testimony of Masanz, the very person that created these documents. The Court also heard the uncontradicted testimony of forensic computer expert, Mark Lanterman, who verified that the COBRA notice letter and election form, containing a provision to select dependent coverage, were created on March 3, 2000 and have not been backdated nor otherwise altered. Although Plaintiff's counsel tried to suggest during cross-examination that these documents had somehow been backdated, the attorney's questions are not evidence and there simply was no evidence presented at trial to support Plaintiff's position.

Like Defendants, Plaintiff could have retained an expert to investigate and analyze Metro Systems' computer system or, at the least, to analyze the evidence and opinions of Lanterman. Plaintiff made the decision not to do so and, consequently, was unable to present any evidence to support his mere suggestions that these documents were not created on March 3, 2000. Thus, the only evidence on this issue, besides the testimony of Masanz herself, is Lanterman's testimony that when "Star Cobra.doc" and "Star 3.doc" are printed on Metro Systems' stationery the resulting documents are Defendants' Exhibit No. 2.[1]

## III. Plaintiff Failed To Present Sufficient Evidence To Overcome The Legal Presumption That Starr, As Recipient, Received The COBRA Notice And Election Form Mailed On March 3, 2000.

---

[1] Likewise, Lanterman testified that the September 5, 2000 letter sent by Masanz to Starr was created on September 5. 2000.

As explained in Part I above, an employer satisfies its obligation to provide COBRA notice by sending the notice by first class mail to the employee's last known address. There is also, as this Court previously recognized, a presumption that a letter properly addressed, stamped, and mailed was received by the person to whom it was sent. *See e.g., Phillips v. Riverside*, 796 F. Supp. 403, 407 (E.D. Ark. 1992) (previously cited in this Court's Order of August 10, 2004). Thus, the employer need only establish that they properly mailed the notice; it need not ensure that it was received.

The fact that the March 3, 2000 letter contained an incorrect zip code does not, as fully explained in Defendants' Trial Brief, render the mailing improper. In fact, it is not necessary for such mailings to even contain a zip code, much less a correct zip code, in order to still be deemed properly addressed. *See e.g., Santoro v. Principi*, 274 F.3d 1366 (2001) and *Pickering v. Comm'r of Internal Revenue*, 75 T.C.M. (CCH) 2152 (1998) (citing the United States Postal Service Domestic Mail Manual which provides that a zip code number is not a requirement for proper delivery).

Defendants therefore met their notification burden by proving at trial that the COBRA notice was prepared and properly mailed on March 3, 2000. There is a legal presumption that the letter reached the recipient and Plaintiff, quite simply, failed to overcome this presumption.

## IV. The March 3, 2000 COBRA Notice And Election Form Reasonably Advised Starr And His Dependent Daughter Of Their Right To Continue Medical Coverage.

In complete contradiction to his claim that the COBRA notice was never received, Plaintiff also generally asserts that Starr would not have understood the purpose and meaning of Defendants' Exhibit No. 2.[2] Significantly, however, such argument was made despite the fact that Starr did not

[2] These issues were thoroughly briefed by the parties in their respective summary judgment memoranda.

himself testify that Defendants' Exhibit No. 2 is ambiguous or confusing. The logical conclusion is that Starr did not offer such testimony because the notice reasonably explained and advised him and his dependent daughter of their right to continue coverage under COBRA.

Upon the occurrence of a "qualifying event," such as termination, an employer is obligated to notify an employee and qualified beneficiaries of their right to continue receiving medical coverage under COBRA. *See* 29 U.S.C. §1166(4)(a). The information contained therein "should adequately inform the employee about 'the coverage [the employee] [is] entitled to receive and the money that [the employee] owe[s] in order to maintain coverage.'" *Lincoln Gen Hosp. v. Blue Cross/Blue Shield of Nebraska*, 963 F.2d 1136, 1140 (8th Cir. 1992). The notice sent to Starr satisfied the necessary notice requirements for it specifically advised Starr that his coverage would normally terminate on March 1, 2000 due to a qualifying event but then explained that he and his dependent were eligible to continue his group health coverage beyond that date and then advised that if he chose to elect to continue coverage he would need to complete and return the enclosed election form and pay the initial premium.

Nevertheless, in argument, Plaintiff's counsel argued that the notice was ambiguous and contains "misspellings." Counsel was particularly critical of the wording in the section entitled "Period of Health Continuation" on page 2, which relates to the right to continue coverage for 36 months from the date of the loss of coverage, under certain circumstances. Despite counsel's arguments, however, the fact remains that the notice fully complies with the law.

Moreover, this section of the notice upon which Plaintiff's counsel so heavily relies, has no relevance whatsoever to the matters at issue in this case. Gabriel Cotton's medical expenses were incurred in August, 2000, less than six months after the March 1, 2000 termination date in the letter. The notification letter clearly provides that coverage could continue for 18 months from the "date

of the loss of coverage"and, therefore, whether or not it could continue for an additional 18 months is not an issue in this case.

Thus, at the very least, the evidence establishes that when considering the pertinent issues and notice language, the notice was clearly sufficient to allow Starr and Cotton to make an informed decision as to whether or not to elect to continue medical coverage. The notice likewise reasonably advised them that they would have to pay for such continued coverage at the cost of $338.75 per month. As explained below, they simply chose not to do so.

## V. The Evidence Demonstrates That Despite Receipt Of The March 3, 2000 Letter, Plaintiff Voluntarily Decided to Forego Coverage.

In an effort to convince the Court that he did not receive notice of his right to continue coverage for himself and dependent, rather than that he simply chose to forego such coverage, Plaintiff denies receiving not only the March 3, 2000 COBRA letter and election form, but also the September 5, 2000 letter from Metro Systems which undisputably contained the correct address and zip code. Plaintiffs may deny receipt of these letters but the evidence weighs in favor of finding otherwise. Again, uncontradicted expert testimony established that the COBRA notice and election form were created on March 3, 2000 and that a subsequent letter was created on September 5, 2000. Masanz's testimony establishes that such documents were mailed and the legal presumption discussed above requires a finding that Starr received them. Plaintiff's claim that he did not receive the September 5, 2000 letter is germane in that it goes to his credibility.

Thus, despite Plaintiff's claim that he never received either of these letters, the evidence supports the more plausible scenario that Plaintiff received the March 3, 2000 COBRA letter and election form, but since Starr was not employed he chose not to pay the $338.75 per month required to continue coverage. He simply did not anticipate that such coverage would become necessary and,

consequently, the lack of medical coverage did not become an issue until Cotton unexpectedly required surgery in August, 2000.

**CONCLUSION**

The evidence presented at trial, when considered in relation to the applicable legal authorities and presumptions, establishes that Masanz created and mailed a proper notice and election form to Starr that reasonably advised him of his right to continue medical coverage for both himself and his dependent daughter. By doing so, Defendants met their statutory obligations. Starr's mere denial of receipt does not negate the fact that Defendants did what was required by them and, therefore, judgment should be entered in favor of Defendants.

Respectfully submitted,

**COUSINEAU, McGUIRE & ANDERSON, CHARTERED**

Dated: February 15, 2005

By: s/Peter G. Van Bergen
**PETER G. VAN BERGEN #112033**
Attorneys for Defendants
1550 Utica Avenue South, Suite 600
Minneapolis, Minnesota 55416-5318
(952) 546-8400

902737