UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1122(JNE)

GARY STARR, individually, and as the father and natural guardian of Gabrielle Cotton, a minor,

Plaintiff,

v.

METRO SYSTEMS, INC., a Minnesota corporation, and DEBORAH MASANZ,

Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

Plaintiff submits the following Memorandum of Law in support of his motion for Amended Findings of Fact, Conclusions of Law, and Order for Judgment.

## FACTS

On September 12, 2005 this Court made and entered its Findings of Fact, Conclusions of Law, and order determining that defendants did not comply with the notice requirements of 29 U.S.C.A. § 1166(a)(4). As a result, the Court ordered the defendants to pay Plaintiff's medical expenses less premiums and deductibles in the total amount of $113,468.86. The Court failed to award pre-judgment interest. The Court did not award a statutory penalty under 29 U.S.C. Sec. 1132(c)(1)(A), finding that it was not necessary to punish the defendants to induce future compliance. The Court failed to make any findings of fact on the issue of bad faith or the degree of prejudice suffered by the plaintiff.

Plaintiff now moves the Court for an amended decision awarding pre-judgment interest and statutory penalty.

## ARGUMENT

### I. THE FAILURE TO AWARD PRE-JUDGMENT INTEREST IS AN ABUSE OF DISCRETION.

To quote the Eighth Circuit decision in Leonard v. Southwestern Bell Corp. Disability, 408 F.3d 528, 533 (8th Cir. 2005):

> Prejudgment interest is an ordinary part of compensatory awards. The principal award is compensation for an injury. Interest on the award is compensation for the inability to use the money between the time of the compensable injury and the time that the award is paid. See Tiemeyer v. Community Mut. Ins. Co., 8 F.3d 1094, 1102-03 (6th Cir.1993). We review the district court's decision as to prejudgment interest for abuse of discretion, Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 868 (8th Cir.2004), and the court abuses its discretion if it denies a prevailing ERISA benefit claimant's request for prejudgment interest, absent exceptional or unusual circumstances, cf. Lutheran Med. Ctr. v. Contractors Health Plan, 25 F.3d 616, 623 (8th Cir.1994).

See also, Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1006 (8th Cir. 2004). Interest is allowed as a part of compensatory damages on liquidated claims, as well as on unliquidated claims on which the amount is "readily ascertainable." Stroh Container Co. v. Delphi Industries, Inc., 783 F.2d 743 (8th Cir. 1986); Peterson v. BASF Corporation, 657 N.W.2d 853, 873 (Minn.App. 2003) (citing Trapp v. Hancuh, 587 N.W.2d 61, 63 (Minn.App. 1998)). Here the damages are liquidated, because they are the medical expenses incurred by the Plaintiff and covered by the plan. This case presented no exceptional or unusual circumstances that bear on the issue of pre-judgment interest and the Court made no Findings of Fact related to the issue of pre-judgment interest. As a result, interest should be awarded.

A total of 1825 days have elapsed from November 1, 2000, when all of the medical services had been provided, to November 1, 2005. Interest under Minn. Stat. Sec. 334.01 at six percent per annum ($18.652 per diem) is $34,040.67. Plaintiff requests that the Court enter an amended decision awarding interest of $34,040.67.

## II. THE FAILURE TO ASSESS A PENALTY IS AN ABUSE OF DISCRETION.

ERISA provides for a penalty for noncompliance with COBRA notice requirements in 29 U.S.C. Sec. 1132(c)(1)(A), which provides in relevant part:

(c) Administrator's refusal to supply requested information; . . .

> (1) Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) or section 1021(f) of this title with respect to a participant or beneficiary, . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant . . . shall be treated as a separate violation.

Whether or not to assess a penalty under the statute is within the Court's discretion, but that discretion must be exercised by consideration of relevant factors. Lawrence v. Westerhaus, 749 F.2d 494, 495 (1984). As the Court stated in Richards v. Aramark Services, Inc., 108 F.3d 925 (8th Cir. 1997):

> "Abuse of discretion" will be found only when trial court's decision is based on erroneous view of law or clearly erroneous assessment of evidence, and can occur in three principal ways: when relevant factor that should have been given significant weight is not considered, when irrelevant or improper factor is considered and given significant weight, and when all proper factors, and no improper ones, are considered, but court, in weighing those factors, commits clear error of judgment.

The purpose of the penalty is to punish noncompliance. Chesnut v. Montgomery, 307 F.3d 698, 704 (8th Cir. 2002). The factors that have been determined to be relevant to penalty assessment in this circuit are prejudice suffered by the beneficiary and the nature of the plan administrator's conduct. Id.

In order to apply the conduct standard, the plan administrator's conduct must be viewed in the light of the duties that ERISA imposes on it as a fiduciary. An ERISA fiduciary "shall discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries . . . (A) for the exclusive purpose of: (i) providing benefits to participants and their

beneficiaries," 29 U.S.C. § 1104(a)(1), and must exercise its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use," 29 U.S.C. § 1104(a)(1)(B). Fink v. Dakotacare, 324 F.3d 685, 690 n. 3 (8th Cir. 2003).

In Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 948 (8th Cir. 1999) the Court reversed the district court's failure to award a penalty under Sec 1132(c) where the employee had to wait three-and-a-half years for his money and had to file suit before the employer finally paid the account over prior to trial, stating:

> We reverse and remand to the district court with orders to vacate its judgment on this issue and to consider whether or not to assess a penalty under the statute. Any penalty to be assessed is at the court's discretion. We note that when other courts have assessed this penalty, they have generally looked at the prejudice to the plaintiff and the nature of the plan administrator's conduct. See Davis v. Featherstone, 97 F.3d 734, 738 (4th Cir. 1996). We caution, however, that "prejudice is not a prerequisite to an award of civil penalties." See Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1494 (11th Cir. 1993) (quotations omitted) (noting that the undisputed facts of the case required some type of award where the plan administrator provided no explanation for its twelve month delay). Finally, we note that the purpose of the penalty is to provide plan administrators with an incentive to timely respond to requests for documents. See Davis, 97 F.3d at 738.

In Davis v. Featherstone, 97 F.3d 734, 738-39 (4th Cir. 1996), the Court reversed the district court's failure to award a penalty and failure to award attorney's fees under Section 1132(c), where the plan administrator failed to provide a copy of the plan until after the plaintiff filed suit, stating:

> Because Davis was a participant entitled to the documents he requested, the district court must reassess its decision not to impose penalties on BGE.
>
> * * *
>
> In addition to the impact on Davis of the administrator's statutory violation, the district court should consider the conduct of the administrator. The purpose of the penalty provision is to provide plan administrators with an incentive to meet requests for information in a timely fashion. See Porcellini v. Strassheim Printing Co., 578 F.Supp. 605, 614 (E.D.Pa.1983). When there is some doubt about whether a claimant is entitled to the information requested, the Supreme Court has suggested that an administrator should err on the side of caution . . . Firestone, 489 U.S. at 118, 109 S.Ct. at 958 (Quotation omitted).

In Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1494 (11th Cir. 1993), the Court reversed the district court's failure to award a penalty where the plan administrator failed to provide a statement of benefits for almost a year:

> [T]he undisputed facts of this case require the district court to impose a penalty under section 1132(c). Honeywell provided Daughtrey's statement of benefits approximately one year after her written request, an interval twelve times longer than the statutory period. Honeywell offered no explanation for this delay except to assure the district court that the delay was not intentional. To the contrary, Honeywell's initial response, itself outside the statutory period, indicates on its face that Honeywell did not intend to respond until July 28, 1989, over eight months after the request. Further, Honeywell has suggested no excusable oversight or inadvertent act that explains the further delay of its response until October 20, 1989. Under these circumstances, Honeywell's ungarnished assertion that its delay was not intentional must be disregarded. Honeywell also assured the district court that its failure to comply was not the result of bad faith. From this we understand Honeywell to assert that it did not intend to prejudice Daughtrey by its failure to respond in a timely manner. While an employer or administrator's bad faith is certainly relevant under section 1132(c), the mere absence of bad faith no more exonerates the failure to provide a timely statement of benefits than does the absence of prejudice to the plan participant. See Curry, 891 F.2d at 847. Under these circumstances, involving an unexplained delay of twelve months in providing a benefits statement, the district court's refusal on remand to impose a civil penalty under section 1132(c) would represent an abuse of discretion. The punitive purposes of section 1132(c) merit the imposition of some penalty. We therefore remand to the district court for the determination of an appropriate penalty within the statutory range of up to $100 a day.

In Garred v. General American Life Ins. Co., 774 F. Supp. 1190, 1201 (W.D.Ark. 1991) the Court stated: "In light of this purpose, aggravation, frustration, and the need to hire an attorney have been recognized as prejudice for the purposes of § 1132(c) claims."

In Phillips v. Riverside, 796 F.Supp. 403, 411 (E.D. Ark. 1992), the Court stated:

> The penalty provisions of Section 1132(c) were intended to induce compliance by plan administrators. . . . [T]he administrator's duties under COBRA are not onerous, while the result of noncompliance could be disastrous for the discharged employee. . . . Here, the documents and procedures used by AHB in providing COBRA notices have been found wanting. While this does not appear to be the result of bad faith and evidence showed that some changes in those procedures already have been made, the Court believes that a penalty should be imposed to impress upon AHB the importance of compliance with COBRA notice requirements.

In Brown v. Aventis Pharmaceuticals, Inc., 341 F.3d 822 (8th Cir. 2003) the Eighth Circuit upheld the district court's imposition of the maximum penalty for nothing more than an administrative error caused by moving of the plan administrator's office:

> Although an "employer's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty," Chesnut v. Montgomery, 307 F.3d 698, 704 (8th Cir.2002), "neither [a defendant's] good faith nor the absence of actual injury to [the plaintiff] precludes the award of a statutory penalty." Id. at 703. There is no evidence that Aventis' failure to provide the necessary information was anything other than an administrative error-ostensibly caused by the company moving its offices during this time period. Even so, Aventis' failure to act for a period of several months, despite Brown's repeated phone calls, could be considered bad faith. Additionally, although Brown did not suffer any loss of health benefits due to the delay, she was forced to invest time, effort, and money in hiring an attorney to gain access to information that she was legally entitled to. Thus it was not an abuse of discretion for the district court to award maximum damages.

In Brooks v. Metrica, 1 F.Supp.2d 559, 568-69 (E.D.Va. 1998), the Court stated:

> In short, then, while a showing of bad faith of the defendant or prejudice to the plaintiff certainly supports imposing a penalty, such a showing is not necessary; to recover statutory damages plaintiff need only show that the defendant did not comply with the statute.
>
> * * *
>
> "Frustration, trouble, and expense," and such prejudicial harms "are relevant factors for a district court to consider in deciding whether to impose a penalty." Davis, 97 F.3d at 738. Also included in the prejudice calculus is "the trouble and expense of engaging an attorney to obtain the [employer's] plan" Id.
>
> * * *
>
> Both Metrica's and Hellums's conduct fell far short of what must be expected of a plan administrator and its agents in responding to participants' questions and complaints. In the circumstances, then, an award of $100 for each day on which Metrica was in violation of the statute would be warranted. . . . Nonetheless, the absence of bad faith here justifies a modest adjustment in the penalty to be assessed from $100 to $80 for each day on which Metrica was in violation.

In Delcastillo v. Odyssey Res. Mgmt., 320 F. Supp. 2d 889 (D. Neb. 2004) the Court imposed the maximum penalty for a delay in giving the COBRA notice of approximately 17 months, plus an additional 18 months thereafter for each beneficiary in the total amount of $279,840 where the medical expenses were only $27,026.11.

With respect to this Court's award of statutory penalty under Sec. 1132(c)(1)(A), the Court made no Findings of Fact with respect to either the conduct of the plan administrator or the degree of prejudice suffered by the Plaintiff, but made the following Conclusions of Law:

> The purpose of a statutory penalty is to punish noncompliance. Chesnut, 307 F.3d at 704. A defendant's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty. Id.
>
> * * *
>
> The Court is not persuaded that Defendants' failure to maintain records sufficient to establish, by a preponderance of the evidence, that timely notice was sent to Starr arose from disregard of COBRA's requirements. It appears that concerns unrelated to ERISA and COBRA led Defendants to treat Starr's termination different from an ordinary case.

Conclusions of Law, ¶¶ 9 and 10.

Because the Court did not consider either the conduct of the plan administrator in the light of her fiduciary duties, or the prejudice suffered by the beneficiary, in deciding not to award a penalty, the Findings of Fact and Conclusions of Law should be amended to award a penalty commensurate with the administrator's bad faith and the prejudice suffered by the beneficiary.

## A. The Plan Administrator's Conduct Both With Respect to ERISA Duties and This Litigation Was In Bad Faith.

Although imposition of penalty does not require that the plan administrator have acted in bad faith, the record is replete with instances of bad faith conduct by the plan administrator with respect to (1) providing a COBRA notice, (2) the record-keeping requirements ERISA, and (3) this litigation. See Brooks, supra, at 569.

First, the Court found that the creation and saving of the March 3 Notice "was at odds with the standard procedure for creating and saving election forms" because of the involvement of William Meyers. The Court made no findings of fact about why the plan administrator involved Meyers in the administration of Mr. Starr's benefit plan, the plan administrator did not testify about why she allowed Meyers to be involved, and she did not call Meyers as a witness to explain it. The plan administrator offered no testimony about how often she departs from

"standard procedure" or for what reasons, or who else she may involve in administering the benefit plan. The involvement of Meyers could have only been for the protection of the employer, which is a violation of the administrator's fiduciary duty toward the plan beneficiary.

The plan administrator kept no record of the mailing of the notice and it is not part of the "standard procedure" to do so. This is in direct violation of ERISA's record-keeping requirements in 29 USC Sec. 1027. In light of the violation of ERISA's record-keeping requirements, namely, the lack of any record of mailing, the Court properly found that no COBRA notice had been given. The administrator offered no evidence that any procedures have been changed to prevent other violations of ERISA and COBRA from occurring in the future. In fact, the standard procedure appears to be to keep no record of the mailing of the COBRA notice and instead place total reliance on the recollection of the plan administrator. Placing sole reliance on the memory of a plan administrator as to whether the notice was mailed is contrary to the requirement of ERISA that such records be kept. In the event of the death or disability of the administrator there would be no way to establish COBRA compliance. The lack of records should not be allowed to defeat the beneficiary's recovery. There was no evidence that the plan administrator has changed her procedures to now keep a record of mailing, nor that the plan administrator has any degree of contriteness over her record-keeping failures. Contrary to the Court's findings of fact, the evidence compels a finding that it is quite necessary to impose a penalty as an incentive to change her procedures under COBRA and ERISA for the protection of plan beneficiaries, as is her duty to do.

Second, during the trial, the administrator offered perjured testimony about the most important issue in this case, namely, the mailing of the COBRA notice, by testifying on direct examination that she specifically recalled mailing the notice, then on cross-examination when confronted with her testimony at deposition, recanting and admitting that she didn't recall it, then

on re-direct examination testifying again that she recalled it. Finding of Fact, ¶ 12. Defendants have known about Masanz' lack of memory of the mailing of the COBRA notice since at least February 12, 2002, when her deposition was taken. In light of the lability of the witness' testimony, the truthfulness of the remainder of her testimony is suspect. The record offers no explanation why perjured testimony was offered by the plan administrator, except as an attempt to defeat the Plaintiff's claim at any cost. Again, the evidence is compelling that a penalty is necessary to induce respect by the plan administrator for the oath and her ERISA imposed fiduciary duty to the plan beneficiary.

Third, in addition, during the trial, the administrator "gave conflicting testimony" about the handling of the March 3 Notice. Finding of Fact, ¶ 14. The lability of her testimony is further evident. No evidence was introduced about how often the plan administrator departs from "standard procedure" with respect to handling of notices. Again, the record compels the finding that a penalty is necessary to induce ERISA compliance, respect for the oath, and respect for ERISA imposed fiduciary duty.

Fourth, the record is replete with evidentiary inconsistencies by the plan administrator. She has never explained how she obtained Mr. Starr's address to mail the COBRA notice on March 3, when the employer's records had only his previous address on Quebec Avenue. See Plaintiff's Proposed Finding of Fact, ¶ 10. Defendants continued to provide coverage to Plaintiff but did not inform him that they were doing so, in violation of their fiduciary duty under 29 U.S.C. § 1104(a)(1) to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries . . . (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries."

Fifth, Defendant Masanz has created and maintained in her records at least 5 different purported COBRA notices and election forms for the Plaintiff, apparently in her effort to cover

up her inadequate record-keeping. Defendant Masanz has at various times identified at least four of those notices to be the one that was sent to the plaintiff. In May, 2001, Defendant Masanz provided a COBRA continuation notice to counsel for the plaintiff as part of his personnel file, purporting to be the one provided to the plaintiff, Plaintiff's Exhibit 4. It is dated March 3, 2000, is addressed to the plaintiff without his apartment number but the correct zip code, quotes a premium for coverage for "employee coverage only," has a blank signature line, and contains no premium amount for continuation coverage for the dependent child. On February 12, 2002, during her deposition, Masanz identified it as the plaintiff's COBRA notice.

On January 4, 2001, Defendant Masanz faxed a different COBRA notice dated March 3, 2000, to the U.S. Department of Labor, representing it to be the one given to the plaintiff, Plaintiff's Exhibits 6 and 7. That representation was false.

During discovery in this action defendants produced a third COBRA notice dated March 3, 2000. Defendant Masanz testified that she gave a photocopy of the plaintiff's COBRA notice to Bill Meyers on the same day it was prepared and this one came from Bill Meyers. This one was also discovered to have been scanned on September 5, 2000, and maintained on the portion of the Metro Systems' file server allocated to "billm." Masanz testified that this one was mailed to the plaintiff on September 5, 2000, with a cover letter representing that this COBRA notice had been mailed to him on March 3, 2000. That representation was false, as the Court found.

A fourth COBRA notice, received in evidence as Defendants' Exhibit 2, is addressed to the plaintiff with apartment number 308 but with the wrong zip code, contains a premium quotation for "Employee or single Dependent coverage only," has a signature line with Defendant Masanz' named typed on it, and has an attached election form with a place to elect coverage for the employee and for the dependent.

A fifth COBRA notice, one of the attachments to the expert report of Mark Lanterman, is

dated March 3, 2000, is addressed to the plaintiff with no apartment number but the correct zip code, quoting a premium for "Employee coverage only," and a blank signature line. This one was recovered from the unallocated space on the Metro Systems file server with no associated time of creation or other metadata.

Defendant Masanz has accessed at least eight more computer files relating to Plaintiff and his COBRA notice that she has never produced or explained:

starr – 3.doc on June 26, 2001;
starr – 3.doc on September 13, 2001;
starr – 3.doc on May 7, 2001;
Starr – cobra.doc on May 29, 2001, and on March 3, 2000;
starr-2.doc on May 29, 2001;
starr-2.doc on September 13, 2001;
starr2.doc on June 26, 2001; and
starr2.doc on September 13, 2001.

Defendants have produced no files with these names, nor disclosed the location of the files, nor explained why there are files concerning the plaintiff in addition to the four files maintained on Defendant Masanz' desktop listed in Plaintiff's Exhibit 28. Defendants have further failed to explain why there is a document having file name "Star 3.doc," purportedly created on March 3, 2000, when a document purportedly created on September 5, 2000, has the file name "Starr-2.doc."

The Defendants' failure to provide evidence on matters in which they would naturally be expected to have an explanation, if the explanation were an innocent one, requires that adverse inferences be drawn against the defendants on the issue of the good faith of their conduct. Again, it appears that a penalty is quite necessary to induce ERISA record-keeping compliance, performance of her fiduciary duty toward the Plaintiff under ERISA, and respect for the oath.

Sixth, the plan administrator's "standard practice" is to send out a COBRA notice that does not meet the requirements of 29 U.S.C. Sec. 1166. See Plaintiff's Proposed Finding of Fact, ¶ 23. There is no evidence that the plan administrator has changed her form. This Court

made no findings as to the adequacy of the March 3 Notice. Again, it appears that a penalty is necessary to induce ERISA and COBRA compliance.

Seventh, the Court's Finding Of Fact, ¶ 18, makes it clear that the plan administrator lied to the Plaintiff in her letter dated September 5, 2000, about the existence of records indicating that a COBRA notice was mailed on March 3, and lied about a "duplicate copy" being enclosed. Again, the evidence compels a finding that a penalty is necessary to induce ERISA compliance and performance of her fiduciary duty toward the Plaintiff.

Although the Court is vested with discretion to award a penalty under Sec. 1132(c), this discretion is required to be exercised by consideration of the factors identified in the appellate decisions. When the Defendants' bad faith is considered in the context of decisions such as Kerr, supra, Davis, supra, Daughtry, supra, Phillips, supra, Brown, supra, and Delcastillo, supra, the Court's refusal to impose a penalty is inexplicable, irreconcilable, and capricious. Under the present circumstances of the extreme bad faith of the plan administrator toward the Plaintiff and this litigation, the Court's discretion does not extend as far as to impose no penalty. A total absence of bad faith by the Plan administrator would not exonerate her from imposition of a penalty, Brown, supra, however, the Court's failure to consider the bad faith of the defendants with respect to their ERISA record-keeping and fiduciary duties, with respect to their duties under COBRA, and with respect to this litigation, requires that the decision must be corrected to require that a substantial penalty be imposed on the plan administrator.

The numerous examples of bad faith of the plan administrator toward COBRA, ERISA, the Plaintiff, and the oath of this Court by the plan administrator, requires imposition of the maximum penalty of $100 per day. In short, nothing in the evidence suggests that a penalty is not necessary to assure future compliance.

**B. The Prejudice Suffered By Plaintiff Is Extreme.**

Although a showing of prejudice by the beneficiary is not necessary to impose a penalty under Sec. 1132(c), the prejudice suffered by Plaintiff is extreme and requires a substantial penalty.

Plaintiff has endured the frustration and grief of incurring medical expenses for his daughter's life-threatening illness, in the amount of over $116,000, which is far beyond his means to pay, without the comfort of insurance coverage to which he was entitled. Plaintiff has been forced to hire an attorney and undergo the expense, time, effort, and frustration of litigation in order to obtain the benefits to which he was entitled under the health plan. He has gone without payment of benefits for approximately 5 years. The prejudice suffered by Plaintiff in this case appears to be far beyond anything that appears in the reported cases.

It was error for the Court to fail to consider the extreme prejudice suffered by the Plaintiff and caused by the Defendants. The degree of prejudice factor requires that the Court impose the maximum penalty of $100 per day.

**C. Punishment is Necessary To Insure Future Compliance with ERISA and COBRA.**

The Court ruled that a penalty is not necessary as punishment for failing to comply with Section 1166(a)(4). This finding of fact is contrary to the evidence, or at best, unsupported by the evidence. More importantly, it is not one of the two factors that the appellate decisions have found relevant to the issue of penalty assessment. Chesnut, supra.

However, even if this factor is subsumed in the conduct factor, Defendants have not shown that their conduct toward the Plaintiff was an isolated incident, that they do not treat all of their employees with similar disregard for the truth, that they realize the importance of record-keeping as a duty under ERISA, that they realize that they are fiduciary for their beneficiaries under ERISA, that they have changed their procedures for keeping track of COBRA notice

mailing, that they have changed their COBRA form to conform to the law, that they don't intend in the future to put their employees through bad faith litigation tactics by false court testimony, or that a substantial penalty is not necessary to assure future compliance.

As a result, a substantial penalty should be imposed upon the plan administrator and nothing short of $100 per day will impress upon the Defendants the importance of changing their conduct and attitude toward their duties. A total of 2019 days have passed since the date by which a COBRA notice should have been sent. In light of the egregiousness of the conduct exhibited by the plan administrator toward the Plaintiff and the severity of the impact of that conduct, Plaintiff requests the maximum penalty of $100 per day in the amount of $201,900.00, which is well within the Court's discretion, and fully justified when the penalty factors are considered.

## CONCLUSION

Plaintiff respectfully requests that the decision be amended to award prejudgment interest of $34,040.67 against both Defendants and a penalty of $201,900.00 against the plan administrator.

Dated: September 23, 2005.

Respectfully submitted,

s/ Robert J. Bruno

Robert J. Bruno
Attorney Reg. No. 12415
ROBERT J. BRUNO, LTD.
1601 E. Highway 13, #107
Burnsville, MN 55337
952-890-9171