**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Civil No. 01-1122(JNE)**

GARY STARR, individually, and as the father and natural guardian of Gabrielle Cotton, a minor,

Plaintiff,

v.

METRO SYSTEMS, INC., a Minnesota corporation, and DEBORAH MASANZ,

Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AWARD**

Plaintiff submits the following Memorandum of Law in support of his motion for an award of attorneys fees.

## FACTS

Plaintiff commenced the instant action in June, 2001, to recover Plaintiff's medical expenses for his daughter of over $116,000 less premiums and co-payments. Plaintiff was awarded a judgment of over $113,000.00 and post-trial motions are pending to determine penalty and interest.

The Plaintiff's attorney's fees are recoverable under 29 U.S.C. Sec. 1132 (g):

> (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

In actions under ERISA the Eighth Circuit applies a five factor test set forth in Lawrence v. Westerhaus, 749 F.2d 494, 495-96 (8th Cir. 1984) to determine whether to award attorney's fees:

> (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and

> beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

Martin v. Arkansas Blue Cross/Shield, 299 F.3d 966, 969 (8th Cir. 2002).

The Court in Martin, id., held that specific findings on each of the Weyerhaus factors was not necessary:

> However, we caution the "five factors" set forth by Westerhaus are by no means exclusive or to be mechanically applied. . . . Instead, the district courts should use the factors and other relevant considerations as general guidelines for determining when a fee is appropriate.
>
> * * *
>
> The bottom line is, district courts are not obligated to regurgitate, rote, the Westerhaus factors. They are well-recognized *general guidelines* which provide direction to the district court, while also facilitating "meaningful appellate review." Eddy, 59 F.3d at 206. As the Eddy court noted, "while a particular application of the . . . factors may be subject to criticism, the factors are reasonable and have been widely accepted by the courts." Id. Indeed, Martin admitted at oral argument that few, if any, fee awards have been denied a prevailing plaintiff in ERISA cases nationwide. This is true even though nine of the circuit courts of appeals do not employ any kind of presumption in favor of fees. Thus, the absence of a presumption has obviously not doomed ERISA plaintiffs' attorney fee requests, and will not do so in this circuit either.

Id., at p. 972.

The Eighth Circuit uses a lodestar method for determining the amount of an attorney's fee award. Geissal ex rel. Estate of Geissal v. Moore, 338 F.3d 926, 935 (8th Cir. 2003), citing Hensley v. Eckert, 461 U.S. 424 (1983).

### A. The Defendants' Conduct Both With Respect to ERISA Duties and This Litigation Was In Bad Faith.

The first Westerhaus factor, the degree of culpability or bad faith of the opposing party clearly favors the award of attorney's fees to the Plaintiff.

The record is replete with instances of bad faith conduct by the plan administrator with respect to (1) providing a COBRA notice, (2) the record-keeping requirements ERISA, and (3) this litigation.

First, the Court found that the creation and saving of the March 3 Notice “was at odds with the standard procedure for creating and saving election forms” because of the involvement of William Meyers. The Court made no findings of fact about why the plan administrator involved Meyers in the administration of Mr. Starr’s benefits, the plan administrator did not testify about why she allowed Meyers to be involved, and she did not call Meyers as a witness to explain it. The plan administrator offered no testimony about how often she departs from “standard procedure” or for what reasons, or who else she may involve in administering the benefit plan. The plan administrator kept no record of the mailing of the notice and it is not part of the “standard procedure” to do so. This is in direct violation of ERISA’s record-keeping requirements in 29 USC Sec. 1027. As a result, the Court properly found that no COBRA notice had been given. The administrator offered no evidence that any procedures have been changed to prevent other violations of ERISA and COBRA from occurring in the future. In fact, the standard procedure appears to be to keep no record of the mailing of the COBRA notice and instead place total reliance on the recollection of the plan administrator. Placing sole reliance on the memory of a plan administrator as to whether the notice was mailed is contrary to the requirement of ERISA that such records be kept, because in the event of the death or disability of the administrator, there would be no way to establish COBRA compliance. There was no evidence that the plan administrator has changed her procedures to now keep a record of mailing, nor that the plan administrator has any degree of contriteness over her record-keeping failures. The evidence compels a finding that the defendants’ record keeping violates Sec. 1027 of ERSISA and is in bad faith.

Second, during the trial, the administrator offered perjured testimony about the most important issue in this case, namely, the mailing of the COBRA notice, by testifying on direct examination that she specifically recalled mailing the notice, then on cross-examination when

confronted with her testimony at deposition, recanting and admitting that she didn't recall it, then on re-direct examination testifying again that she recalled it. Finding of Fact, ¶ 12. In light of the lability of the witness' testimony, the truthfulness of the remainder of her testimony is suspect. The record offers no explanation why perjured testimony was offered by the plan administrator, except as an attempt to defeat the Plaintiff's claim at any cost. The evidence is compelling that the plan administrator acted in bad faith for violating the oath and violating her ERISA-imposed fiduciary duty to the plan beneficiary.

Third, during the trial, the administrator "gave conflicting testimony" about the handling of the March 3 Notice. Finding of Fact, ¶ 14. No evidence was introduced about how often the plan administrator departs from "standard procedure" with respect to handling of notices. The record compels the finding that the plan administrator acted in bad faith for violating the testimonial oath and violating her ERISA-imposed fiduciary duty to the plan beneficiary.

Fourth, the record is replete with evidentiary inconsistencies by the plan administrator. She has never explained how she obtained Mr. Starr's address to mail the COBRA notice on March 3, when the employer's records had only his previous address on Quebec Avenue. See Plaintiff's Proposed Finding of Fact, ¶ 10. Defendants continued to provide coverage to Plaintiff but did not inform him that they were doing so, in violation of their fiduciary duty under 29 U.S.C. § 1104(a)(1) to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries . . . (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries."

Fifth, the plan administrator has created and maintained in her records at least 5 different purported COBRA notices and election forms for the Plaintiff, apparently in her effort to cover up her inadequate record-keeping. See Plaintiff's Proposed Finding of Fact, ¶ 18. The plan administrator has accessed at least eight more computer files relating to Plaintiff and his COBRA

notice that she has never produced or explained. See Plaintiff's Proposed Finding of Fact, ¶ 19. The Defendants' failure to provide evidence on matters in which they would naturally be expected to have an explanation, if the explanation were an innocent one, requires that adverse inferences be drawn against the defendants on the issue of the good faith of their conduct. Again, the record compels the finding that the plan administrator acted in bad faith for violating the oath and violating her ERISA imposed fiduciary duty to the plan beneficiary.

Sixth, the plan administrator's "standard practice" is to send out a COBRA notice that does not meet the requirements of 29 U.S.C. Sec. 1166. See Plaintiff's Proposed Finding of Fact, ¶ 23. There is no evidence that the plan administrator has changed her form. This Court made no findings as to the adequacy of the March 3 Notice. Again, the record compels the finding that the plan administrator acted in bad faith for violating COBRA and her ERISA imposed fiduciary duty to the plan beneficiary.

Seventh, the Court's Finding Of Fact, ¶ 18, makes it clear that the plan administrator lied to the Plaintiff in her letter dated September 5, 2000, about the existence of records indicating that a COBRA notice was mailed on March 3, and lied about a "duplicate copy" being enclosed. Again, the evidence compels a finding that a penalty is necessary to induce ERISA compliance and performance of her fiduciary duty toward the Plaintiff. Again, the record compels the finding that the plan administrator acted in bad faith for violating the oath and violating her ERISA imposed fiduciary duty to the plan beneficiary.

Plaintiff has made an overwhelming showing of bad faith by the Defendants, both in their administration of the plan, as well as their conduct in this litigation.

**B. Defendants Are Able To Pay the Plaintiff's Attorney's Fees.**

The second Westerhaus factor, the ability of the opposing party to pay attorney fees, favors the award of attorney's fees to the Plaintiff.

Defendants do not lack financial wherewithal to pay the Plaintiff's attorney's fees. Although direct evidence is lacking on how much money the Defendants earn, the lack of such a record is attributable to Defendants' refusal to provide this information in discovery. Plaintiff attempted to discover the Defendant's tax returns so that such a showing could be made to the Court on the issue of penalty and fees, but it was refused by the Defendants and the Magistrate Judge failed to order its production. See Docket Item 16.

What we do know about the Defendants' finances is that they sell furniture to Fortune 500 Companies; in 2001 they employed 64 employees; they run a self-insured health insurance plan; they are able to pay a penalty of $100 per day; and they do about $10 million in business per year. See, Deposition of Deborah Masanz, February 12, 2001, p. 9.

Under the circumstances, either discovery should be allowed to provide a record to the court on this factor, or it should be presumed that Defendants have the financial ability to pay Plaintiff's attorney's fees.

**C. An Award Of Attorney's Fees Will Have a Future Deterrent Effect.**

The third Westerhaus factor, whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances, clearly favors the award of attorney's fees to the Plaintiff. Clearly, the Defendants need to change their standard practices to bring them into conformance with ERISA and COBRA, both with respect to documenting the proof of mailing, as well as correctly stating COBRA rights in the notice itself. An award of attorney's fees will have the effect of changing the Defendants' practices.

In addition, the blatant bad faith of the Defendants in this litigation, by offering perjured testimony and other conduct described in Section A., supra, will be deterred by an award of attorney's fees.

**D. Plaintiff's Success in This Litigation Will Benefit All Plan Participants.**

The fourth Westerhaus factor, whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself, favors the award of attorney's fees to the Plaintiff.

This litigation has shone the light of day on the inadequacy of Defendants' ERISA mandated record keeping procedures, as well as the inadequacy of Defendants' COBRA notice itself. All plan participants will benefit from the Plaintiff's success.

In addition, the Plaintiff's success will deter future bad faith litigation tactics by the Defendants, which will be benefit all plan participants.

**E. Defendants' Position Was Without Merit.**

The fifth Westerhaus factor, the relative merits of the parties' positions, clearly favors the award of attorney's fees to the Plaintiff. Plaintiff succeeded on the merits of this action on all of the issues that were ruled upon by the Court, except for imposition of penalty and interest, for which Plaintiff has filed a post-trial motion. Defendants did not succeed on any of the issues. In fact, it is not necessary that Plaintiff prevail on all issues litigated, or that time was expended on issues not litigated. In Hensley, supra, 461 U.S. 424, 431 the Court approved the observation of the court in Davis v. County of Los Angeles, 8 E.P.D. ¶ 9444 (CD Cal.1974):

> It also is not legally relevant that plaintiffs' counsel expended a certain limited amount of time pursuing certain issues of fact and law that ultimately did not become litigated issues in the case or upon which plaintiffs ultimately did not prevail. Since plaintiffs prevailed on the merits and achieved excellent results for the represented class, plaintiffs' counsel are entitled to an award of fees for all time reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter.

The Hensley court further noted:

> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the

> district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. See Davis v. County of Los Angeles, 8 E.P.D. ¶ 9444, at 5049 (CD Cal.1974). Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

Id., at 435.

On the dispositive facts of the case, Defendants have known about Masanz' lack of memory of mailing of the COBRA notice and lack of record of mailing early on in this litigation, since at least February 12, 2002, when her deposition was taken. Yet, Defendants continued with this litigation and even proffered false testimony about Masanz' recollection of mailing during her direct examination at trial, and again on her redirect examination. In fact, defendants continued to assert in post trial submissions that the evidence on the issue of mailing was in their favor: "[The] evidence quite clearly established that Defendants met their statutory legal obligation to send a COBRA notice to Plaintiff." Defendants' Memorandum in Response to Plaintiff's Findings of Fact, p. 3.

On this factor alone, the lack of merit in Defendants' litigation position and the excellent results obtained by the Plaintiff favors the imposition of attorney's fees.

## II. PLAINTIFF SHOULD BE AWARDED LODESTAR ATTORNEY'S FEES.

All of the five Westerhaus factors favor the award of Plaintiff's attorney's fees, and the proper exercise of this Court's discretion is to award such fees to the Plaintiff. The Affidavit of Robert J. Bruno establishes reasonable and necessary attorney's fees for his services in this action. The lodestar amount is $47,425.00, which this Court should award to the Plaintiff.

**CONCLUSION**

Plaintiff respectfully requests an award of attorney's fees in the amount of $47,425.00 against both defendants.

Dated: September 29, 2005.

Respectfully submitted,

s/ Robert J. Bruno

Robert J. Bruno
Attorney for Plaintiff
Attorney Reg. No. 12415
ROBERT J. BRUNO, LTD.
1601 E. Highway 13, #107
Burnsville, MN 55337
952-890-9171