# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 05-4178/06-1087

01-cv-1122 JNE/SRN

---

| | | |
|---|---|---|
| Gary Starr, Individually, and as the Father and Natural Guardian of Gabrielle Cotton, a Minor, | * | |
| Appellant, | * | |
| v. | * | Appeal from the United States District Court for the District of Minnesota. |
| Metro Systems, Inc., a Minnesota Corporation; Deborah Masanz, | * | |
| Appellees. | * | |

---

Submitted: June 15, 2006
Filed: August 24, 2006

---

Before SMITH, HEANEY, and GRUENDER, Circuit Judges.

---

SMITH, Circuit Judge.

Gary Starr sued his former employer, Metro Systems, Inc., and Deborah Masanz, the administrator of Metro's plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1416, for their failure to provide Starr with notification of his right to continue his health and dental insurance coverage, as required by the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §§ 1161–1169. Following a bench trial, the district court found in favor of

SCANNED
AUG 28 2006
U.S. DISTRICT COURT MPLS

Starr. However, the court denied Starr's requests for attorney fees and statutory damages, which Starr appeals. We affirm in part and reverse in part.

I. *Background*

Starr refurbished office furniture for Metro Systems, Inc., a Minnesota corporation. During his employment, Starr received an employee welfare benefit plan as required by ERISA. The plan, administered by Metro Vice President Deborah Masanz, provided Starr and his daughter, Gabrielle Cotton, with medical and dental coverage.

On February 24, 2000, Metro terminated Starr's employment. Upon termination, Starr was entitled to receive from Metro notice of his rights under COBRA. The plan required Metro to provide Starr a form enabling him to elect to continue his and Cotton's medical and dental insurance coverage. The plan states:

> When a qualifying event occurs, your Employer [Metro] must give you the necessary COBRA election form within the time period specified by law. You must complete and return this form to your Employer within 60 days of the later of:
>
> - The date you or your Dependent would lose coverage; or
> - The date you or your Dependent receives the COBRA election forms.

Metro's compliance with this provision or rather its failure to comply is the focus of this case.

Under Metro's customary processes, only Masanz sends COBRA notices, which she normally does according to a standard procedure. However, Masanz did not follow her standard procedure with Starr. On March 3, 2000, Masanz routinely drafted a notification and election form to send to Starr. William Meyers, Metro's Chief

Financial Officer, interrupted Masanz's normal procedure for creating and sending COBRA notices before the March 3 Notice was mailed to Starr.[1] In her deposition and testimony at trial, Masanz had difficulty precisely recollecting events surrounding the handling of Starr's notification and election form.[2] Masanz equivocated in her explanation of the creation and sending of Starr's March 3 Notice, offering conflicting accounts in her deposition and trial testimony.

Ultimately, Masanz admitted that she had no recollection of sending the March 3 Notice to Starr. There is no record that the March 3 Notice was actually sent to Starr. The district court found that the March 3 Notice was never sent to Starr. Consequently, Metro did not handle the termination of Starr's coverage in accordance with the plan.

According to the plan, Starr's coverage would terminate on March 1, 2000 without an election to continue his benefits and payment of the $338.75 monthly premium. Nonetheless, Metro extended Starr's coverage until July 1, 2000, in an effort to discourage Starr from pursuing a discrimination claim against the company. The company did not inform Starr of its decision to continue coverage, but Starr submitted claims and received benefits for medical expenses incurred in March, April, and May of 2000. From August to October of 2000, Starr incurred $116,728.65 in medical expenses for treatment provided to his daughter that undisputedly would have been covered under the policy, if in effect.

---

[1]Curiously, Meyers did not testify and was never deposed. Masanz provided several different accounts of what happened on March 3 and ultimately admitted that she could not remember anything that happened that day.

[2]At trial, Starr offered testimony from a computer expert that Masanz's March 3 Notice to Starr was deleted from her computer a short time after its creation. The expert also testified that Meyers saved the file on an area of the server to which Masanz did not have access.

By letter dated August 30, 2000, Starr informed Metro that he had not received information regarding his rights under COBRA. Masanz responded by letter dated September 5, stating that Metro's "records" indicate that it provided Starr with notice of his COBRA rights on March 3, 2000, and that she was enclosing a "duplicate copy of the notification." However, as previously stated, Masanz later acknowledged there actually were no records indicating that the March 3 Notice was sent to Starr.[3] The district court found that when Masanz said "records," she meant her recollection. Curiously, the district court also found that Masanz had no recollection of sending the March 3 Notice to Starr.

Starr brought the instant action, individually and on behalf of his daughter Cotton, against Metro and Masanz. Starr alleged that the defendants violated COBRA by failing to provide adequate notice of his rights regarding a continuation of coverage after his termination. Following a bench trial, the district court found in favor of Starr. Specifically, the court found that "[h]aving failed to give Starr timely notice of his right to continue coverage for himself and Cotton and denied Starr the ability to elect to continue coverage, Defendants are bound to provide coverage to Starr and Cotton." The court awarded Starr $113,468.86, which is the amount of medical expenses incurred from August to October of 2000 less co-payments and premiums from March through October of 2000. The court refused to award statutory damages, finding that "Defendants' failure to maintain records sufficient to establish, by a preponderance of the evidence, that timely notice was sent to Starr [did not arise] from a disregard of COBRA's requirements."

---

[3]The notice enclosed with the September 5 letter was not a "duplicate copy" of the March 3 Notice: after unsuccessfully attempting to find the March 3 Notice, Masanz *created* a COBRA notice and election form from a template. Masanz enclosed this re-created notice in her September 5 letter, passing it off as a true copy. She also created "copies" for the United States Department of Labor ("DOL") and Richard J. Bruno, Starr's attorney. The latter two "copies" contained material differences from the March 3 Notice and the "duplicate copy" enclosed with the September 5 letter.

In his motion to amend the verdict, Starr argued that he was entitled to prejudgment interest and statutory damages. The district court granted the motion in part, ordering Metro to pay $15,567.50 in prejudgment interest. The court denied the motion with respect to statutory damages, reiterating its earlier findings and finding further than Masanz did not act in bad faith, noting the four-month extension of coverage provided to Starr without payment of premium.

Starr filed a motion for attorney fees, but the district court denied the motion, applying the five factors set forth in *Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir. 1984). The court found that Metro had the ability to pay and that an award of attorney fees would have a deterrent effect; however, the court held these factors were outweighed by the absence of bad faith, the fact that Starr did not bring the suit as a class action, and the fact that the defendants' position was not without merit because they survived summary judgment. Starr appeals the district court's denial of statutory damages and attorney fees.

## II. *Discussion*

### A. *Statutory Damages*

Under 29 U.S.C. § 1132(c)(1)(A), an ERISA plan administrator "may in the court's discretion be personally liable" up to $100 per day from the date of his or her failure to comply with the notification requirements of 29 U.S.C. § 1166(a)(4). The purpose of this statutory penalty is to provide plan administrators with an incentive to comply with the requirements of ERISA, *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 948 (8th Cir. 1999), and to punish noncompliance, *Chesnut v. Montgomery*, 307 F.3d 698, 704 (8th Cir. 2002). In exercising its discretion to impose statutory damages, a court primarily should consider "the prejudice to the plaintiff and the nature of the plan administrator's conduct." *Kerr*, 184 F.3d at 948. Although relevant, a defendant's good faith and the absence of harm do not preclude the imposition of the § 1132(c)(1)(A) penalty. *Chesnut*, 307 F.3d at 703. We review the decision to deny

statutory damages for an abuse of discretion. *Wilson v. Moog Auto., Inc. Pension Plan & Trust*, 193 F.3d 1004, 1010 (8th Cir. 1999).

Here, the district court declined to impose the statutory penalty. Based on the record, we cannot say the district court abused its discretion. In its order, the district court found that the plan administrator, Masanz, did not act in bad faith by failing to give timely notice to Starr. Specifically, the district court found Masanz timely created a COBRA notice addressed to Starr. The court acknowledged that the notice was not sent to Starr but found no willful failure on Masanz's part to send the notice. The district court further surmised that had Masanz acted in bad faith, Starr's coverage would not have been extended for four months after his scheduled termination under the plan. Interestingly, Meyers, Metro's Chief Financial Officer who apparently handled the notice at some point, was neither deposed nor called to testify. Based upon its assessment of the evidence and the credibility of the witnesses, the district court found that although Starr established that Metro's record-keeping system failed, the evidence did not show the plan administrator's conduct constituted disregard of COBRA's notice requirements. If this were a de novo review, we might reach a different conclusion, but the imposition of the statutory penalty is discretionary, and the denial of statutory damages on these facts does not amount to an abuse of discretion.

B. *Attorney Fees*

We review the district court's decision to award or deny attorney fees for an abuse of discretion. *Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962, 968 (8th Cir. 2004); *see* 29 U.S.C. § 1132(g)(1) (stating that a court, in its discretion, may allow a reasonable attorney's fee and costs to either party in an action under ERISA). That being said, this court has previously emphasized the role of ERISA's remedial nature in determining whether to award fees, stating:

> ERISA is remedial legislation which should be liberally construed to effectuate Congressional intent to protect employee participants in employee benefit plans. A district court considering a motion for attorney's fees under ERISA should therefore apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts.

*Welsh v. Burlington N., Inc., Employee Benefits Plan*, 54 F.3d 1331, 1342 (8th Cir. 1995) (citations, internal quotations, ellipsis, and brackets omitted). Therefore, although there is no presumption in favor of attorney fees in an ERISA action, a prevailing plaintiff rarely fails to receive fees. *See Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966, 972 (8th Cir. 2002) (en banc). In exercising its discretion, we have set forth the following list of five non-exclusive of factors for consideration:

> (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Id.* at 969 & n.4 (citing *Lawrence*, 749 F.2d at 495–96).

In the proceedings below, the district court found that the balance of the above factors weighed in favor of Metro. Considering ERISA's remedial nature and the facts of this case, we disagree for the reasons stated below.

The district court denied Starr's motion for attorney fees after rejecting Starr's assertion that Masanz perjured her testimony regarding the COBRA notice and Metro's recordkeeping. However, the absence of bad faith is not dispositive. We note that Starr brought the case individually and on behalf of his daughter, not as a class

action. Nevertheless, the remaining factors favor Starr and indicate an award of attorney fees is in order.

First, the defendants undisputedly have the ability to pay. Second, the deterrent effect of an award of fees deserved more weight. An award of attorney fees will serve as an incentive to Metro and the administrator to pay closer attention to their COBRA notice handling procedures when an employee departs under circumstances similar to Starr's.

Third, we believe the district court erred in its evaluation of the relative merits of the parties' positions. The court considered this issue a toss-up because, even though Starr won on the merits, the defendants survived a motion for summary judgment. The defendants survived summary judgment primarily because a genuine issue of material fact existed regarding whether the March 3 Notice was sent. In her deposition, Masanz testified that she recalled mailing the March 3 Notice, which allowed the defendants to survive summary judgment. However, Masanz admitted at trial that she did not recall mailing it. The district court made a specific finding of fact to that effect. Therefore, defendants' survival of summary judgment deserves little, if any, weight as a showing of the relative merits. Further, the defendants may have succeeded in showing that they did not act in bad faith, but Starr clearly succeeded in establishing a meritorious claim that defendants failed to comply with COBRA's notice requirements. Finally, given the remedial nature of ERISA legislation, and the need for ERISA litigants to have effective access to the courts to vindicate their rights, we hold that the district court abused its discretion in denying Starr's request for attorney fees.[4]

---

[4]Contrary to the dissent's assertion, we do not overturn the facts as found by the district court. Instead, we hold that given the facts found by the district court, the conclusion not to award attorney fees represents an abuse of discretion.

III. *Conclusion*

We hold that the district court erred by refusing to award attorney fees. Accordingly, we reverse on the issue of attorney fees. In all other respects, the order of the district court is affirmed.

GRUENDER, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from Part II. B. of the Court's opinion, in which the Court holds that the district court abused its discretion in denying attorney fees. I would affirm the district court's denial of attorney fees.

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "In making this determination, a district court abuses its discretion when there is a lack of factual support for its decision, or when it fails to follow applicable law." *Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 969 (8th Cir. 2002) (en banc). While I might join the Court in finding that an award of attorney fees was appropriate in this case were I reviewing the issue de novo, the district court's opposite decision had factual support and followed the applicable law.

The district court presented a thorough discussion of the factors from *Lawrence v. Westerhaus*, 749 F.2d 494, 495-96 (8th Cir. 1984) (per curiam), and concluded that "an award of attorney fees to Starr is not appropriate." The Court does not identify any failure by the district court to follow the applicable law. Instead, the Court contends that the district court erred in weighing two of the factors, future deterrent effect and the relative merits of the parties' positions.

With respect to future deterrent effect, the district court found that the factor favored Starr because an award of attorney fees "might deter departures from procedures designed to give timely notice of COBRA rights" and "failures to maintain

sufficient records to establish [that] timely notice was given." This is essentially identical to what the Court itself states about future deterrent effect. Therefore, it is unclear where the Court finds error in the district court's analysis of this factor.

With respect to the relative merits of the parties' positions, the district court found that Metro's position had merit because Metro survived summary judgment and "resolution of the case required evaluation of evidence received at trial." The Court discounts the district court's analysis of this factor because Masanz recalled mailing the notice at the summary judgment stage, but she did not recall mailing it in her trial testimony. However, in its order denying attorney fees, the district court addressed this inconsistency in Masanz's testimony in detail and still found that Metro's position was not without merit. The district court was in the best position to evaluate the relative merits of the parties' positions as the case developed, and I see no reason to disturb its finding.

The Court draws a statement from *Martin* that a prevailing ERISA plaintiff rarely fails to receive attorney fees, but *Martin* makes clear that this fact does not justify any presumption in favor of awarding the fees. 299 F.3d at 972. To the extent the Court uses this fact as support for reversing the district court here, it serves to "pretermit the exercise of [the district court's] discretion." *Id.* at 971 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)). This we are not allowed to do.

Accordingly, I respectfully dissent from Part II. B. of the Court's opinion.

______________________________

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

August 24, 2006

Mr. Robert James Bruno
107 Professional Plaza
1601 Highway 13, E.
Burnsville, MN 55337

Re: 05-4178/06-1087 Gary Starr vs. Metro Systems, Inc.

Dear Counsel:

The court today issued an opinion in this case. Judgment in accordance with the opinion is also entered today.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc must be received in the clerk's office within 14 days of the date of the entry of judgment. No grace period for mailing is allowed, and the date of the postmark is irrelevant. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

(5148-010199)

Sincerely,

Michael E. Gans
Clerk of Court

dms

Enclosure(s)

cc: Peter G. Van Bergen
Andrea E. Reisbord
Tamara L. Novotny
Richard Sletten

District Court/Agency Case Number(s): CIV 01-1122 JNE/SRN