**Nos. 05-4178 and 06-1087**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

---

GARY STARR, individually, and as the father and natural guardian of Gabrielle Cotton, a minor,

Plaintiff-Appellant,

vs.

METRO SYSTEMS, INC., a Minnesota corporation, and DEBORAH MASANZ,

Defendants-Appellees;

---

Appeal from Judgment of the District Court for the District of Minnesota

---

**BRIEF OF APPELLANT AND ADDENDUM**

---

Robert J. Bruno
ROBERT J. BRUNO, LTD.
1601 East Highway 13, #107
Burnsville, Minnesota 55337
Tel: 952-890-9171

*Attorney for Appellant*

**EXHIBIT A**

## SUMMARY OF THE CASE

Plaintiff appeals from the district court judgment that fails to impose a statutory penalty on the ERISA health plan administrator and that fails to award attorney's fees to the prevailing plaintiff. The plan administrator (1) failed to provide a COBRA notice of continuation rights after termination of employment, (2) failed to create and maintain sufficient records to show compliance with COBRA, (3) created numerous false COBRA notices and provided them to the plaintiff, government investigators, and plaintiff's counsel to mislead them that she had given plaintiff a COBRA notice, (4) made misrepresentations to the plaintiff about the existence of plan records, (5) gave false testimony under oath at trial, and (6) never had a legally sufficient COBRA notice form to begin with. As a result, plaintiff suffered substantial prejudice by incurring $116,000 in uncovered medical expenses, hiring an attorney, and undergoing the trouble and aggravation of litigation to vindicate his rights. The findings that the plan administrator and employer were not culpable, that prejudice was not a basis for a penalty, and that the Westerhaus factors did not favor an award of attorney's fees, were serious errors in judgment and abuses of discretion. Oral argument of 15 minutes is requested.

# TABLE OF CONTENTS


Summary of the Case........................................................i

Table of Authorities........................................................v

Jurisdictional Statement....................................................1

Issues Presented and Standard for Review....................................1

Statement of the Case........................................................4

Statement of Facts...........................................................6

Summary of Argument.........................................................12

Argument....................................................................15

I. The District Court Abused Its Discretion When It Refused to Impose a Statutory Penalty for the Plan Administrator's Conduct and Plaintiff's Substantial Prejudice ..........................15

A. The Plan Administrator's Conduct Was Bad Faith............21

1. Failure To Send the COBRA Notice........................23

2. Recordkeeping Failures Violated ERISA ...................24

3. False Testimony at Trial .....................................26

4. Misrepresentation of Plan Records To Beneficiary.....28

5. Misrepresentations to Others...............................29

a. Plaintiff's Exhibit 4.....................................29

b. Plaintiff's Exhibits 6 and 7...........................30

c. Other Spurious COBRA Notices....................30

6. Masanz' Template COBRA Form Is Erroneous.........31

B. Substantial Prejudice Was Suffered by the Plaintiff..........35

C. Punishment is Necessary To Insure Future Compliance With ERISA and COBRA..........................................36

II. The District Court's Refusal To Award Attorney's Fees To The Prevailing Plaintiff Is An Abuse Of Discretion..................37

A. The Defendants' Conduct Both With Respect to ERISA Duties and This Litigation Was In Bad Faith ...................40

B. Defendants Are Able To Pay Plaintiff's Attorney's Fees......41

C. Award Of Attorney's Fees Will Deter..............................41

D. Plaintiff Has Sought To Benefit All Plan Participants.......42

E. Defendants' Position Was Without Merit.........................43

CONCLUSION..........................................................................................47

CERTIFICATE OF COMPLIANCE...................................................48

ADDENDUM

Findings of Fact, Conclusions of Law, and Order filed September 12, 2005..........................................................1

Judgment entered September 13, 2005....................................8

Order filed October 17, 2005 (granting interest and denying penalty)...........................................................................9

Order filed December 19, 2005 (denying attorney's fees)...........13

Defendant's Trial Exhibit 2 (Defendant's purported COBRA Notice)...........17

# TABLE OF AUTHORITIES

## CASES:

Brown v. Aventis Pharms., 341 F.3d 822, 825 (8th Cir. 2003)......2, 17, 21

Chesnut v. Montgomery, 307 F.3d 698, 704 (8th Cir. 2002)………..17, 33

Daniel v. Eaton Corp., 839 F.2d 263, cert. denied,
488 U.S. 826 (6th Cir. 1988)…………………………………………22

Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1494 (11th Cir. 1993)…18, 23

Davis v. Featherstone, 97 F.3d 734,738 (4th Cir. 1996)……………..……18

Fink v. Dakotacare, 324 F.3d 685, 690 n. 3 (8th Cir. 2003)……..………22

Geissal ex rel. Estate of Geissal v. Moore, 338 F.3d 926, 935
(8th Cir. 2003)………………………………………………………41

Hensley v. Eckert, 461 U.S. 424 (1983)……………………………….41

Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 948
(8th Cir. 1999)………………………………..2, 12, 17, 18, 21, 38

Lawrence v. Westerhaus, 749 F.2d 494, 495-96
(8th Cir. 1984)…..…………………………..40, 41, 42, 43, 44, 45, 46

Lincoln Gen. Hosp. v. Blue Cross/Blue Shield, 963 F.2d 1136,
1140 (8th Cir. 1992)………………………………..……………..32

Martin v. Arkansas Blue Cross/ Shield, 299 F.3d 966, 969
(8th Cir. 2002)……………...…………………………3, 13, 14, 40

McDowell v. Krawchison, 125 F.3d at 958……..…………………….32, 33

McGee v. Funderburg, 17 F.3d 1122, 1124 (8th Cir. 1994)………………39

Richards v. Aramark Services, Inc., 108 F.3d 925, 927 (8th Cir. 1997)……………………………………………………..16, 23

Romero v. SmithKline Beecham, 309 F.3d 113 (3rd Cir. 2002)…………22

Sheehan v. Guardian Life Ins. Co., 372 F.3d 962, 968 (8th Cir. 2004)……………………………………………………3, 39

Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 590 (9th Cir. 1984)……………………………………………………….45

Stanton v. Larry Fowler Trucking, Inc., 52 F.3d 723 (8th Cir. 1995)…..25

U.S. S.E.C. v. Zahareas, 374 F.3d 624, 627 (8th Cir. 2004)………………42

U.S. for Use of Yonker Const. Co. v. Western Contracting Corp., 935 F.2d 936, 942 (8th Cir. 1991)…...…………………13, 22, 41, 42

Welsh v. Burlington Northern, Inc., 54 F.3d 1331, 1342 (8th Cir. 1995)…………………………….………………3, 39, 45

Wilson v. Moog Automotive, Inc. Pension Plan and Trust for U.A.W., 193 F.3d 1004, 1010 (8th Cir. 1999)……………………2, 16

Winchester v. Pension Committee of Michael Reese Health Plan, Inc. Pension Plan, 942 F.2d 1190 (7th Cir. 1991)…………..……1

**STATUTES:**

28 U.S.C. §1291(2001)….…………………………………………………..1

28 U.S.C. § 1331(2001)…………………………………………………...1

29 U.S.C. Ch. 18(2000)…………………………..………………………15

29 U.S.C. Secs. 1001-1416(2000)……………….………………………7

29 U.S.C. Sec. 1027(2000)….…………………………………………20, 25

29 U.S.C. Sec. 1104(a)(1)(2000)……….……………………………………….22

29 U.S.C. § 1104(a)(1)(B)(2000)……………..……………………………..22

29 U.S.C. Sec. 1132(c)(2000)…….…………………………………2, 12, 17

29 U.S.C. Sec. 1132(c)(1)(A)(2000)…………………………………………..16

29 U.S.C. Sec. 1132(g)(2000)………………………………………3, 15, 39

29 U.S.C. Sec. 1162(2)(A)(ii)…..…………………………………………..35

29 U.S.C. Sec. 1163 (2)(2000)....…………………………………………..15

29 U.S.C. Sec. 1166 (2000)……………………………………..4, 16, 25, 33

**OTHER AUTHORITIES:**

F.R.Civ.P. 52(b)..………………………………….…………………………..1

69 Fed. Reg. 30108…….....…………………………………………………...35

## JURISDICTIONAL STATEMENT

This appeal is from the Judgment of the United States District Court for the District of Minnesota, filed on September 13, 2005, granting judgment in favor of the plaintiff on all issues, except statutory penalty and attorney's fees. District court jurisdiction of this ERISA case is proper under 28 U.S.C. § 1331(2001). Jurisdiction of this appeal from the final decision of the district court is proper under 28 U.S.C. § 1291(2001). The appeal is timely, having been filed on November 10, 2005, a date within 30 days after the entry of the district court's order on October 17, 2005, disposing of the last remaining motion to amend or make additional factual findings under F.R.Civ.P. 52(b).

## ISSUES PRESENTED AND STANDARD OF REVIEW

Issue 1: Did the district court abuse its discretion when it refused to impose a statutory penalty for the plan administrator's conduct, which constituted bad faith and caused substantial prejudice?

Record: This issue was raised by Appellant in the record on appeal. Complaint, par. 21, Appellant's Appendix (hereafter "App.") p. 4; Plaintiff's Proposed Findings of Fact, Conclusions of Law, and Order

for Judgment, pp. 12-13, App., pp. 320-21; Plaintiff's Memorandum, of Law In Support of Motion for Amended Findings of Fact, pp. 3-14, App., pp. 364-375.

Decision: The District Court refused to impose a statutory penalty. Findings of Fact, Conclusions of Law, and Order (hereafter "Findings"), p. 7, App., p. 346, Appellant's Addendum (hereafter "Add."), p.7; Order, pp. 3-4, App., pp. 395-96, Add. 11-12.

Standard of Review: The standard of review is whether the court abused its discretion. Wilson v. Moog Automotive, Inc. Pension Plan and Trust for U.A.W., 193 F.3d 1004, 1010 (8th Cir. 1999).

Authorities in Support of Reversal: Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 948 (8th Cir.1999); Brown v. Aventis Pharms., 341 F.3d 822, 825 (8th Cir. 2003); 29 U.S.C. Sec. 1132(c)(2000).

Issue 2: Did the district court abuse its discretion when it refused to award attorney's fees to the prevailing plaintiff?

Record: This issue was raised by Appellant in the record on appeal. Complaint, p. 4, App. p. 4.; Motion For Attorney's Fees [Docket No. 64], App., p. 377.

Decision: The District Court refused to award attorney's fees. Order [Docket No. 79], App., p. 405.

Standard of Review: The standard of review is whether the court abused its discretion. Sheehan v. Guardian Life Ins. Co., 372 F.3d 962, 968 (8th Cir.2004).

Authorities in Support of Reversal: Martin v. Arkansas Blue Cross/ Shield, 299 F.3d 966, 969 (8th Cir. 2002); Welsh v. Burlington Northern, Inc., 54 F.3d 1331, 1342 (8th Cir. 1995); 29 U.S.C. Sec. 1132(g)(2000).

## STATEMENT OF THE CASE

This action was commenced on June 22, 2001, by the filing of the Complaint seeking damages, statutory penalty, interest, and attorney's fees against plaintiff's former employer and its ERISA plan administrator for failure to provide notice under 29 U.S.C. Sec. 1166 (2000) of his rights to continuation of insurance benefits. Complaint, App. 1. Defendants' Answer alleges that they gave proper and timely notice of plaintiff's continuation rights. Answer, par. 4, App., p. 8.

On January 22, 2004, plaintiff moved for summary judgment on the grounds that plaintiff did not receive a notice of continuation rights under 29 U.S.C. Sec. 1166 (2000), that defendants did not meet their burden of proof that notice was given to the plaintiff, and that the notice that defendants alleged, even if given, was insufficient as a matter of law. Motion For Summary Judgment, App., pp. 11-195. On August 10, 2004, the district court denied the motion, ruling that Masanz' testimony in her deposition that she prepared and mailed a notice to Starr raised a dispute as to a material fact, while ignoring her deposition testimony that she had no specific recollection of mailing it. Order, p. 6, App., p. 290. It further ruled that ERISA requires the

employer and the plan administrator to maintain records establishing "when a notice under section 1166 is given to a particular employee," and even though defendants had no such record, plaintiff was not entitled to summary judgment. Order, p. 7, App., p. 291. Further, the district court ruled that the sufficiency of the notice was a question of fact rather than of law, that the evidence should be construed in favor of the defendants, and a "reasonable fact finder could conclude that the notice was sufficient." Id., p. 9, App., p. 293.

On February 1, 2005, the case was tried to the court without a jury. On September 12, 2005 the court issued its decision finding that the COBRA notice was not given, awarding judgment to plaintiff for his medical expenses minus premiums and co-payments, in the amount of $113,468.86, and awarding no interest and no statutory penalty. Findings, App., p. 340, Add., p. 1. Judgment was entered on September 13, 2005 as ordered. Docket No. 57, Add., p. 8.

On September 23, 2005, plaintiff filed a motion to amend the Findings, requesting an award of interest and statutory penalty. Motion to Amend Findings of Fact, Conclusions of Law, Order For Judgment and Judgment, App., p. 347. On September 30, 2005 plaintiff

moved the court for an award of attorney's fees. Motion For Attorney's Fees, App., p. 376. By Order filed October 17, 2005 and entered October 18, 2005, the court amended its decision, awarding pre-judgment interest in the amount of $15,567.50, and denying the motion to award a statutory penalty. Order, App., p. 393, Add., p. 9. An Amended Judgment was entered October 28, 2005, which included the pre-judgment interest. On November 10, 2005, the plaintiff filed a notice of appeal of the judgment. Notice of Appeal, App., p. 403.

On December 19, 2005, the court denied the plaintiff's motion for attorney's fees. Order, App., p. 405. On December 23, 2005, the plaintiff filed a notice of appeal of the order denying attorney's fees. Notice of Appeal, App., p. 409.

On January 9, 2006 the two appeals were consolidated for briefing and submission to the Court.

## STATEMENT OF FACTS

Plaintiff Starr is the father with legal and physical custody of his daughter, Gabrielle Cotton, residing in Eagan, Minnesota. Finding, par. 1, Add., p. 1. Defendant Metro Systems, a seller of office furniture in Eden Prairie, Minnesota, employed the plaintiff full time as a

furniture refurbisher from June 9, 1997 to February 24, 2000. Finding, pars. 2, 4, Add., pp. 1, 2. During Starr's employment with Metro Systems, it had an employee welfare benefit plan ("Plan") as required by ERISA, 29 U.S.C. Secs. 1001-1416 (2000). Finding, par. 5, Add., p. 2. From May 1998 to February 24, 2000, Starr was enrolled in the Plan for medical and dental coverage for himself and Cotton. Finding, par. 6, Add., p. 2.

On February 24, 2000, Metro Systems terminated Starr's employment for reasons other than gross misconduct. Finding, par. 7, Add., p. 2. The Plan required Metro Systems to provide Starr with an election form to elect to continue his and Cotton's coverage for medical and dental coverage. Finding, par. 8, Add., p. 2.

The ERISA plan administrator is Defendant Deborah Masanz. Transcript of trial ("T."), p. 55. Masanz is the vice president and controller of Metro Systems. Finding, par. 3, Add., p. 2. Metro Systems is self-insured for the first $15,000 in claims for each employee, and it pays a premium for coverage of claims in excess of $15,000. T., p. 54. Masanz is the only one who send out the COBRA notices. T., p. 57. She creates COBRA notices from a template that she received from Great

West Health Insurance. T., p. 42. The template is a Microsoft Word document and she changes it by adding the employee's name, address, date of termination, and date coverage would terminate. T., p. 44.

Defendant Masanz testified on direct examination that Defendants' Exhibit 2 is the COBRA notice that she created on March 3, 2000 from her template, and subsequently mailed to Starr. T., p. 44-48. She didn't testify when she mailed it. Id. At the time she created Defendants' Exhibit 2, she had to call Great West's agent, Jack Skoog, to get the premium amount. T., p. 61. She specifically recalls calling Skoog. Id., T., p. 62. She does not specifically recall calling Skoog. T., p. 63. On cross-examination, she admitted that she doesn't specifically recall following her general mailing practice with regard to the March 3 COBRA notice. T., p. 66. Masanz has no specific recollection of following her general practice with respect to COBRA notices on March 3, 2000. T., p. 83. On re-direct she again testified that she has specific recollection that she mailed it. T., p. 100.

The district court found that:

> On direct examination, Masanz testified that she followed her standard procedure to send the March 3 Notice to Starr. On cross-examination, Masanz testified that she did not specifically recall following her standard procedure to send

> the notice to Starr. The Court finds that Masanz does not recall sending the notice to Starr.

Finding of Fact, par. 12, Add., p. 3.

Masanz also testified variously that after creating Starr's COBRA notice and printing it on her printer, William Meyers made a photocopy of it and she doesn't remember giving it to him, T., p. 67. Contrary to that testimony, she testified moments later that she gave the COBRA notice to Meyers. T., p. 69. Contrary to that testimony she testified that she believes she made the photocopy. T., p. 67. She also testified that Plaintiff's Exhibit 8 is a document produced in discovery and she doesn't remember getting it from William Meyers. T., p. 72. Contrary to that testimony she testified moments later that it came from William Meyers because she had given a copy of Starr's COBRA notice to him. T., p. 73.

The district court found that:

> Masanz gave conflicting testimony about how the March 3 Notice was handled after being printed on Metro letterhead. She testified that Meyers probably had taken the March 3 Notice from her, that he had made a photocopy, and that she "didn't know for years" that he had a photocopy. She then testified that she did not know whether Meyers had taken possession of the March 3 Notice and that she did not know whether she had given him the notice. Shortly thereafter, she testified that she had made a photocopy and that she had given it to him immediately.

Finding of Fact, par. 14, Add., p. 3-4.

Masanz also testified that Plaintiff's Exhibit 17 is a copy of the original COBRA notice, except for the election form on the last page. T., p. 75, App. p. 426. In direct contradiction, she testified that the COBRA notice sent with her September 5, 2000 letter is not a copy of the original COBRA notice, rather it is a recreation from her COBRA notice template. T., p. 53. In addition, she testified that Plaintiff's Exhibit 17, including the incorrect election form on the last page, was sent to Starr on September 5, 2000, with the representation that it was the notice that had been sent to him on March 3, 2000. T., p. 77. The district court found that

> [t]he notice enclosed with the September 5 letter was not a duplicate copy of the March 3 Notice. After unsuccessfully attempting to find the March 3 Notice, Masanz *created* a COBRA notice and election form from a template.

Finding of Fact, par. 18 (emphasis in original), Add., p. 5.

Contrary to Masanz' September 5, 2000 cover letter, there are no records that show the mailing of a COBRA notice to Starr. T., p. 81. The district court specifically found that "[t]here is no record of the March 3 Notice actually being mailed to Starr." Findings, par. 13, Add.,

p. 3. "Again, there are no records that the March 3 Notice was sent to Starr." Findings, par. 18, Add., p. 5.

Masanz also testified both that Plaintiff's Exhibit 4, which contains no premium for dependent coverage, and which is an entirely different document from Defendants' Exhibit 2, was created by Masanz from the template in response to the request of plaintiff's counsel for Starr's personnel records, T., pp. 100-105, App., p. 411; and that Plaintiff's Exhibit 4 is Starr's COBRA notice. T., p. 100. The district court's findings are silent about this testimony.

Masanz also misrepresented to the United States Department of Labor, in response to their inquiry, that Plaintiff's Exhibit 6, another entirely different document with no premium for dependent coverage, was the one sent to Starr. T., p. 106-07, App., p. 416. The district court's findings are silent about this testimony.

Another entirely different COBRA notice for Mr. Starr was discovered on the Metro Systems file server by its computer expert, Mark Lanterman. T., p. 135, App., p. 465, part of Defendants' Exhibit 10. The district court's findings are silent about this testimony.

Masanz testified that she created Defendants' Exhibit 9, a cover

letter dated September 5, 2000, yet Lanterman testified that Masanz did not create it. T., p. 51, 146.

The district court made no findings about the false COBRA notices created by Masanz, although Masanz' testimony is undisputed that she created such false COBRA notices concerning the Plaintiff.

## SUMMARY OF THE ARGUMENT

Plaintiff has had to wait for over five years and prosecute this litigation through trial to judgment and post trial motions in order to collect medical expenses for his daughter's ruptured appendix, which were covered under his employer's ERISA health plan, because the plan administrator failed to provide a notice of plaintiff's continuation rights under COBRA. Not only was a COBRA notice not given to him, the plan administrator created numerous spurious COBRA notices and misrepresented to the plaintiff, to the U.S. Department of Labor, plaintiff's counsel, and possibly others that she had given plaintiff a COBRA notice and had proof of it in order to discourage the plaintiff from bringing this action.

A penalty is provided in 29 U.S.C. Sec. 1132(c) of up to $100 per day against the plan administrator for failure to provide a COBRA

continuation notice, and the two factors relevant to the exercise of the Court's discretion are (1) the nature of the plan administrator's conduct and (2) the degree of prejudice suffered by the beneficiary. Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 948 (8th Cir.1999). The purpose of the penalty is to deter ERISA violations and induce ERISA compliance. Id. Knowing and unreasonable conduct constitutes bad faith. U.S. for Use of Yonker Const. Co. v. Western Contracting Corp., 935 F.2d 936, 942 (8th Cir. 1991).

The plan administrator's failure to provide a COBRA notice; her failure to maintain records required under ERISA; her creation of spurious COBRA notices and misrepresentations to plaintiff, the U.S. Department of Labor, plaintiff's counsel, and others, that she had given a COBRA notice to plaintiff and had records proving it; and her false testimony at trial, all constitute knowing and unreasonable conduct by the plan administrator which warrants a penalty.

In addition, the substantial prejudice suffered by the plaintiff, is itself justification for awarding a statutory penalty. The district court's failure to award a penalty, in the face of serious misconduct on the part of the plan administrator both in the administration of plaintiff's

benefits, as well as this litigation, and the substantial prejudice suffered by plaintiff, represents a clear error in judgment and an abuse of discretion.

Moreover, ERISA allows a prevailing plaintiff to be awarded his reasonable attorney's fees in the discretion of the Court. Martin v. Arkansas Blue Cross/ Shield, 299 F.3d 966, 969 (8th Cir. 2002). The factors to be considered on whether to award attorney's fees in an ERISA case are (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. Id.

The evidence is undisputed that the defendants engaged in knowing and unreasonable conduct both during the administration of the plaintiff's benefits and during the litigation; that defendants have the ability to pay attorney's fees; that an award of fees will undoubtedly

have a future deterrent effect; that plaintiff sought to benefit all plan beneficiaries by pointing out the deficiencies in defendants' COBRA notice form; and that plaintiff is the prevailing party on all of the merits of the action. These factors require that attorney's fees be awarded to the plaintiff.

The district court's refusal to award fees because the defendants were able to survive a motion for summary judgment based on false deposition testimony and based on the district court's erroneous conclusion that the COBRA notice form could be found sufficient by a reasonable fact-finder, represent clear errors in judgment and abuse of its discretion.

## ARGUMENT

### I. The District Court Abused Its Discretion When It Refused to Impose a Statutory Penalty Based On the Plan Administrator's Conduct and the Substantial Prejudice Suffered By Plaintiff.

The Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. 99-272, ("COBRA"), which is Subchapter I of the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. Ch. 18 (2000), requires a plan administrator to notify--

> (A) in the case of a qualifying event described in paragraph (1), (2), (4), or (6) of section 1163 of this title, any qualified beneficiary

> with respect to such event, ... of such beneficiary's rights under this subsection.

29 U.S.C. Sec. 1166 (2000). Termination of employment for reasons other than gross misconduct is a qualifying event under 29 U.S.C. Sec. 1163 (2) (2000).

ERISA provides that the court may make the plan administrator personally liable for damages of up to $100 per day for violation of Sec. 1166:

> (1) Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) or section 1021(f) of this title with respect to a participant or beneficiary, . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant. . . shall be treated as a separate violation.

29 U.S.C. Sec. 1132(c)(1)(A)(2000).

The district court's decision whether or not to assess a penalty is reviewed for abuse of discretion. Wilson v. Moog Automotive, Inc. Pension Plan and Trust for U.A.W., 193 F.3d 1004, 1010 (8th Cir. 1999).

> "Abuse of discretion" will be found only when trial court's decision is based on erroneous view of law or clearly

> erroneous assessment of evidence, and can occur in three principal ways: when relevant factor that should have been given significant weight is not considered, when irrelevant or improper factor is considered and given significant weight, and when all proper factors, and no improper ones, are considered, but court, in weighing those factors, commits clear error of judgment.

Richards v. Aramark Services, Inc., 108 F.3d 925, 927 (8th Cir. 1997).

The factors that are relevant to penalty assessment are prejudice suffered by the beneficiary and the nature of the plan administrator's conduct. Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 948 (8th Cir. 1999). However, neither a defendant's good faith nor the absence of actual injury to the plaintiff precludes the award of a statutory penalty. Brown v. Aventis Pharmaceuticals, Inc., 341 F.3d 822, 825 (8th Cir. 2003) (investing time, effort, and money in hiring an attorney to vindicate rights under ERISA is prejudice for purpose of the statutory penalty).

The statutory penalty is designed "to punish noncompliance," Chesnut v. Montgomery, 307 F.3d 698, 704 (8th Cir. 2002), and "to provide ... an incentive" for compliance with ERISA requirements. Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 948 (8th Cir.1999); Winchester v. Pension Committee of Michael Reese Health Plan, Inc.

Pension Plan, 942 F.2d 1190 (7th Cir. 1991) (purpose is not so much to penalize as to induce plan administrators to comply with ERISA requirements).

In Kerr, this Court reversed the district court's failure to award a penalty under Sec 1132(c) where the employee had requested plan documents, had to wait three-and-a-half years for his money, and had to file suit before the employer finally paid the account over prior to trial. Kerr, supra, at p. 948 (citing with approval, Davis v. Featherstone, 97 F.3d 734, 738 (4th Cir. 1996) and Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1494 (11th Cir. 1993)).

In Davis, supra, the court of appeals reversed the district court's failure to award a penalty and failure to award attorney's fees under Section 1132(c), where the plan administrator failed to provide a copy of the plan until after the plaintiff filed suit. Id., at p. 738. Likewise, in Daughtrey, supra, the Court instructed the lower court to impose some penalty for failure of the plan administrator to provide a statement of benefits for almost a year, holding that the employer's conduct could not be considered other than an unexplained violation of ERISA's requirements, and that the employer's assertion that the violation was

unintentional had to be disregarded. Id., at p. 1494 ("the undisputed facts of this case require the district court to impose a penalty under section 1132(c)").

Likewise, the undisputed facts of this case require the district court to impose a penalty. The district court found that the plan administrator, Deborah Masanz, created a COBRA letter and election form addressed to plaintiff on March 3, 2000, but that it was not sent to the plaintiff because of the involvement of Metro Systems' CFO, William Meyers. Finding, pars. 10 through 15, Add., pp. 3-4. The court found that the plan administrator created a duplicate of the COBRA notice on September 5, 2000 and palmed it off to the plaintiff with a misrepresentation that it was a copy. Finding, par. 18, Add., p. 5.

The district court found numerous direct contradictions in the plan administrator's testimony about the handling of the notice and found misrepresentations in her September, 2000 letter about copies of the notice. Finding, par. 14, Add., p. 3. In addition, the district court found that the plan administrator falsely represented that she had records establishing the mailing of the notice on March 3, 2000, where no such records existed. Id.

The district court made no findings about the plan administrator's undisputed creation of several other false COBRA notices that she palmed off to the United States Department of Labor and plaintiff's counsel, and one found on her computer. Supra, pp. 11-12.

The district court made no finding that the administrator violated ERISA's recordkeeping requirement, 29 U.S.C. Sec. 1027 (2000). As to the administrator's false testimony about her recollection of mailing the notice and contradictory testimony about keeping a copy of it, the court attributed it to "confusion, mistake, or faulty memory rather than willful intent to testify falsely." Order, p. 2, Add., p. 14.

With respect to the imposition of a statutory penalty, the court refused to award a penalty because

> The Court is not persuaded that Defendants' failure to maintain records sufficient to establish, by a preponderance of the evidence, that timely notice was sent to Starr arose from disregard of COBRA's requirements. It appears that concerns unrelated to ERISA and COBRA led Defendants to treat Starr's termination different from an ordinary case. The Court concludes that a statutory penalty is not necessary as punishment for failing to comply with section 1166(a)(4) in this case.

Conclusions of Law, par. 10, Add., p. 7.

In denying plaintiff's motion for amended findings, the district

court gave a further explanation for its refusal to award a penalty:

> Masanz did not act in bad faith in failing to timely give notice to Starr of his right under COBRA to continue coverage. As set forth in the Findings of Fact, Masanz timely created a COBRA notice (March 3 Notice) addressed to Starr. Although the Court found the notice was not sent to Starr, this finding was not based on a willful failure to send the notice. Moreover, the extension of Starr's coverage for four months after its scheduled termination under the Plan indicates that the failure to send the March 3 Notice to Starr was not done in bad faith.
>
> As to the harm experienced by Starr, he incurred medical expenses on behalf of his daughter and brought this action to obtain coverage for those expenses. Under these circumstances, a court could impose a penalty. *See Brown v. Aventis Pharms.*, 341 F.3d 822, 825 (8th Cir 2003). Nevertheless, imposition of a statutory penalty is discretionary. *See id*. The Court reiterates here what is stated on September 12, 2005. The Court is not persuaded that Defendants' failure to maintain records sufficient to establish, by a preponderance of the evidence, that timely notice was sent to Starr arose from disregard of COBRA's requirements. A statutory penalty is not necessary as punishment for failing to comply with COBRA in this case.

Add., pp. 11-12.

The district court abused its discretion when it (1) held that the plan administrator's conduct was not in bad faith, (2) held that substantial prejudice was not a basis for a penalty in the absence of bad faith, (3) held that punishment was the only purpose for the award of a

penalty and it was not necessary, and (4) required the plaintiff to show that the plan administrator's COBRA violations are the "ordinary case."

**A. The Plan Administrator's Conduct Was Bad Faith.**

The first factor for awarding a penalty is "nature of the plan administrator's conduct." Kerr, supra. Willful violations of ERISA are bad faith for purposes of a penalty. Brown, supra (failure to act for several months despite repeated phone calls could be considered bad faith). Mere neglect or misfeasance is a proper basis for assessment of a penalty. Daniel v. Eaton Corp., 839 F.2d 263, cert. denied, 488 U.S. 826 (6th Cir. 1988). Bad faith or intentional conduct is a factor for assessment of a penalty. Romero v. SmithKline Beecham, 309 F.3d 113 (3rd Cir. 2002). Knowing and unreasonable conduct constitutes bad faith. U.S. for Use of Yonker Const. Co. v. Western Contracting Corp., 935 F.2d 936, 942 (8th Cir. 1991).

An ERISA plan administrator owes the beneficiary a fiduciary duty. An ERISA fiduciary "shall discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries . . . (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries," 29 U.S.C. Sec. 1104(a)(1) (2000), and must exercise

its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use," 29 U.S.C. § 1104(a)(1)(B) (2000). Fink v. Dakotacare, 324 F.3d 685, 690 n. 3 (8th Cir. 2003).

The record is replete with undisputed instances of willful and culpable conduct toward the plaintiff by the plan administrator in derogation of her fiduciary duty. The district court's conclusion that the plan administrator did not act in bad faith is "based on an erroneous assessment of evidence" and a "clear error in judgment." Richards, supra.

**1. Failure To Send the COBRA Notice.**

The Court found that the creation and saving of the March 3 Notice "was at odds with the standard procedure for creating and saving election forms" because of the involvement of Metro CFO William Meyers. Finding of Fact, Par. 11; Add., p. 3.

Defendants offered no explanation why the plan administrator involved Meyers in the process, or more importantly, offered no explanation how the involvement of Meyers prevented Masanz from

sending the COBRA notice to the plaintiff. Thus, the involvement of Meyers, with or without the consent of Masanz, does not exonerate the administrator's failure to send a COBRA notice to the plaintiff. Instead, the failure to mail the notice cannot not be considered other than an unexplained violation of ERISA's requirements. Daughtrey, supra. Masanz has not suggested any excusable oversight or inadvertent act that explains why she did not deposit the COBRA notice in the U.S. Mail in accordance with her standard procedure, with or without the involvement of Meyers.

The district court's conclusion that the failure to send the notice was not willful is mere conjecture. Order, p. 3, Add. 11 ("Although the Court found the notice was not sent to Starr, this finding was not based on a willful failure to send the notice.") The only evidence cited by the district court for the defendant's good faith was the payment of claims for four months after scheduled termination, an act which is just as consistent with the defendant's knowledge that it had not sent a COBRA continuation notice, rather than an unexplained extension of a gratuity to the plaintiff. Id.

In short, because there is no evidence that Masanz was prevented

by Meyers or other circumstance from complying with COBRA's notice requirement, her failure to send the notice was, at the very least, culpable. The imposition of a penalty will deter future ERISA violations by impressing upon the plan administrator the importance of performing her duties as a fiduciary solely in the interest of beneficiaries, and disregarding any attempt to interfere with administration of the plan by her employer.

**2. Masanz' Recordkeeping Failures Violate ERISA.**

The plan administrator kept no record of the mailing of the notice and it is not part of the "standard procedure" to do so. Finding, par. 13, Add. 3. This is a violation of ERISA's record-keeping requirement. Stanton v. Larry Fowler Trucking, Inc., 52 F.3d 723 (8th Cir. 1995) ("[An] administrator . . . is required under § 1027 to maintain records evidencing the notice given pursuant to § 1166(a)(4).") The administrator offered no evidence that any procedures have been changed or adopted to prevent future violations of ERISA and COBRA. Contrary to the district court's Findings, the evidence compels a finding that it is quite necessary to impose a penalty as an incentive to change her procedures under COBRA and ERISA for the protection of the Plan

and its beneficiaries.

The district court's conclusion that Masanz' "failure to maintain records sufficient to establish, by a preponderance of the evidence, that timely notice was sent to Starr [did not arise] from disregard of COBRA's requirements," is perplexing, to say nothing of irrelevant. Conclusion of Law, par. 10, Add., p. 7. Both the failure to give the notice and to keep the record of mailing, are **themselves** disregards of COBRA and ERISA, respectively. COBRA does not require the keeping of sufficient records – ERISA does. So, it is wholly immaterial that ERISA's record keeping violation did not arise from failure to send the COBRA notice, as the district court seemed to require.

The recordkeeping failures were intentional, in violation of ERISA, and in violation of her fiduciary duty. They cannot reasonably be characterized as anything other than bad faith. The district court's conclusion that the failure to keep sufficient records must arise from the failure to send the COBRA notice in order for any of it to constitute bad faith or be a basis for a penalty, is fundamental legal error.

The imposition of a penalty will not only punish, but more importantly will deter future violations by impressing upon the plan

administrator the importance of ERISA-mandated recordkeeping.

**3. False Testimony At Trial.**

During the trial, the administrator offered false testimony about the most important issue in this case, namely, the mailing of the COBRA notice. She testified on direct examination that she specifically recalled mailing the notice, T., pp. 44-48, then on cross-examination when confronted with her deposition testimony, she flip-flopped and admitted that she didn't recall it. T. pp. 66, 83. On re-direct examination a few minutes later she flip-flopped again testifying that she recalled it. T., p. 100. It is inconceivable how a witness could be repeatedly mistaken from one moment to the next about the existence of her recollection of an event, by affirmatively testifying under oath within the span of a few minutes the existence of a recollection, then the non-existence of it, then the existence of it. In addition, the plan administrator testified under oath that she specifically recalled calling the insurance agent to get the premium for plaintiff's COBRA notice, T., p. 62, then a few seconds later she testified under oath that she did not recall it. T., p. 63.

In addition, even though the district court found that Masanz

"gave conflicting testimony" about the handling of the March 3 Notice, her other testimonial conflicts, given for the purpose of defeating plaintiff's coverage, were not even worthy of consideration by the district court for purposes of penalty assessment. Findings, par. 14, Add., p. 3.

Indeed, at every turn the district court defended the testimonial discrepancies of the plan administrator, calling them "the product of confusion, mistake, or faulty memory rather than willful intent to testify falsely." Order, p. 2, Add. p. 14; See also, Findings, par. 18, Add., p. 5 ("By 'records' Masanz was referring to her recollection.") If the plan administrator had not knowingly violated ERISA by failing to keep sufficient records, perhaps the confusion, mistake, and faulty memory would have been obviated.

Statutory damages under section 1132(g) are necessary to induce respect by the plan administrator for the oath, for her ERISA-imposed fiduciary duty to the plan beneficiary, and for her ERISA-imposed recordkeeping duty, both for the benefit of the Plaintiff as well as all of the other plan beneficiaries. The district court's disregard of the plan administrator's conduct was an abuse of discretion.

**4. Misrepresentation of Plan Records To the Beneficiary.**

The district court found that on September 5, 2000, the plan administrator wrote a letter to the plaintiff that misrepresented the enclosed notice, Plaintiff's Exhibit 8, as a copy of the one sent earlier on March 3, 2000. Finding, par. 18, Add., p. 5. The letter makes the further misrepresentation that records establish that notice was mailed on March 3, 2000, when no such records existed. Id. The district court was required to distort the meaning of the English language in order to defend Masanz' conduct. Findings, par. 18, Add., p. 5 ("By 'records,' Masanz was referring to her recollection.") "Records" and "recollection" are mutually exclusive words, the former being tangible, and the latter intangible. Masanz knew precisely that the duplicate notice she had just created on September 5 was not a copy and she knew that there were no records of either mailing or the March 3 notice itself because that is why she had to create a new one.

These misrepresentations to the beneficiary about Plan "records" were intentional, in violation of her fiduciary duty, made with the intent of misleading the beneficiary, defeating his coverage under the Plan, and deterring the beneficiary from enforcing his rights. They

cannot reasonably be characterized as anything other than bad faith. The district court committed a clear error in judgment when it disregarded the administrator's conduct for purposes of penalty assessment.

### 5. Misrepresentations to Others.

The district court ignored other undisputed instances of intentionally deceitful conduct by the plan administrator.

#### a. Plaintiff's Exhibit 4.

In May, 2001, Defendant Masanz provided Plaintiff's Exhibit 4, another different COBRA continuation notice, to counsel for the plaintiff as part of his personnel file, proffering it as the one provided to the plaintiff on March 3. T., pp. 100-105. It is different from Defendants' Exhibit 2, is addressed to the plaintiff without his apartment number but the correct zip code, quotes a premium for coverage for "employee coverage only," has a blank signature line, and contains no premium amount for continuation coverage for the dependent child, nor a premium for dental coverage. On February 12, 2002, during her deposition, Masanz identified it as the plaintiff's COBRA notice. Id. Masanz created Exhibit 4 when plaintiff's counsel

asked for it in May, 2001, so she knew it was not the one sent to the plaintiff. T., p. 104. The district court ignored this evidence.

This misrepresentation was nothing but another attempt by the plan administrator to defeat coverage and to conceal her ERISA-mandated recordkeeping deficiencies. It cannot reasonably be characterized as anything other than knowing and deceitful, i.e. bad faith.

**b. Plaintiff's Exhibits 6 and 7.**

On January 4, 2001, Defendant Masanz faxed a different COBRA notice dated March 3, 2000, to the U.S. Department of Labor, in response to its inquiry about plaintiff's COBRA notification, representing it to be the one given to the plaintiff. Plaintiff's Exhibits 6 and 7, T., p. 106, 38. That representation by Masanz was knowingly false. This notice is addressed to the plaintiff without his apartment number but the correct zip code, quotes a premium for coverage for "employee coverage only," has a blank signature line, contains no premium amount for continuation coverage for the dependent child, and does not contain a premium for dental coverage. Masanz had to have known that this was another notice that she created in order to palm it

off as a copy of the one she thought she sent on March 3. The district court again ignored the evidence of the plan administrator's knowing and deceitful conduct and as a result abused its discretion.

**c. Other Spurious COBRA Notices.**

Another COBRA notice addressed to Plaintiff, one of the attachments to the expert report of Mark Lanterman, Defendant's Exhibit 10, is dated March 3, 2000, is addressed to the plaintiff with no apartment number but the correct zip code, quoting a premium for "Employee coverage only," a blank signature line, no place to elect coverage for the minorand no premium for dental coverage. This one was recovered from the unallocated space on the Metro Systems file server with no associated time of creation or other metadata. App., p. 465. The district court disregarded this evidence.

The district court committed a clear error in judgment when it disregarded the plan administrator's undisputed bad faith conduct toward the plaintiff, by her creation of numerous spurious COBRA notice documents and palming them off to those who asked for a copy.

**6. Masanz' Template COBRA Form Is Obviously Erroneous.**

The COBRA notice must provide accurate and sufficient coverage

and premium information to enable an intelligent decision to be made about continuation for the covered dependent:

> In Lincoln Gen. Hosp. v. Blue Cross/Blue Shield, 963 F.2d 1136, 1140 (8th Cir. 1992), we held that a plan administrator satisfied its notice obligation by providing information that "adequately informed [the qualified beneficiary] of the coverage she was entitled to receive and the money that she owed in order to maintain this coverage." Similarly, in McDowell v. Krawchison, the Sixth Circuit stated that "the notice given must be sufficient to allow the qualified beneficiary to make an informed decision whether to elect coverage." 125 F.3d at 958. We agree that these general standards are appropriate.

Chesnut v. Montgomery, 307 F.3d 698, 702 (8th Cir. 2002). It follows then, as a matter of law, that a plan administrator has not "adequately informed [the qualified beneficiary] of the coverage she was entitled to receive" if the information in the notice is an inaccurate statement of rights under COBRA.

Even if Masanz had sent Defendants' Exhibit 2 to the plaintiff, the claimed notice, the template form from which it was created, and all of the other false COBRA notices created by Masanz contain fundamental misstatements of COBRA rights that prevent an intelligent choice about coverage from being made. The plan administrator's "standard practice" is to send out a COBRA notice that does not meet the

requirements of 29 U.S.C. Sec. 1166 because it does not correctly state the beneficiary's rights, contains no premium for optional coverages, and contains information so confusing as to prevent an intelligent decision about whether to elect coverage. No reasonable fact-finder could find that the alleged notice or the template correctly states the beneficiary's rights, contains a premium for optional coverages, and is not confusing.

First, the notice fails to quote a premium for dental care benefits. App., p. 436, Add., p. 19. A premium for both coverages (medical and dental) is required under 1165(a)(2) ("If there is a choice among types of coverage under the plan, each qualified beneficiary is entitled to make a separate selection among such types of coverage.") In addition, the terms of the notice itself require the opportunity to elect either health or dental coverage or both. App. p. 434, Add., p. 17.

Defendant Masanz testified that without a premium for dental coverage an intelligent decision about election of this optional coverage was not possible. T., p. 110-11.

Second, on page two, the COBRA continuation period is described as "until the earliest of the following dates:

> (4) the date which is:
>
> 36 months from the date of Loss of Coverage, if the COBRA beneficiary if(sic) one of your dependents.

App., p. 435, Add., p. 18.

This statement that the 36 month period is the maximum period for a dependent beneficiary is erroneous as a matter of law. The 36 month period is available to a dependent beneficiary only if there is a second qualifying event during the 18 months after the date of the qualifying event. 29 U.S.C. Sec. 1162(2)(A)(ii)(2000). See, 69 Fed. Reg. 30108.

Third, although COBRA requires that notice of continuation rights be given to all qualified beneficiaries, the notice in this case was directed solely to Gary Starr. Throughout the document the words "you" and "your," namely Mr. Starr, is used to describe his COBRA rights. From the perspective of the dependent child, there is no way of knowing whether "you" or "your" applies to her. As a result, the notice was an inadequate explanation of the continuation rights of Gabrielle Cotton under COBRA to allow a decision to be made on her behalf.

Fourth, in numerous places in the alleged notice defendants have used language in the alternative that creates a needless ambiguity that

prevents an intelligent decision about whether to elect COBRA continuation coverage:

- on page one the second paragraph refers to "you and/or your covered Dependents";
- on page one the third paragraph twice refers to "you and/or your" eligible or covered Dependents";
- on page three, paragraph (2)(B)(a) states a premium for "medical and/or prescription drug benefits";
- on page three, paragraph (2) (B)(a)(i) quotes a premium for "Employee or single Dependent coverage only";

Defendants' Exhibit 2, Add., pp. 17-21.

There is no evidence that the plan administrator has changed her form. The district court repeatedly refused to make findings about the sufficiency of the notice requested in plaintiff's summary judgment motion, at trial, and in Plaintiff's post-trial motion. Again, it appears that a penalty is necessary to induce ERISA and COBRA compliance by this plan administrator, for the benefit of plaintiff and the other beneficiaries of the Plan.

The deficiencies in the notice form cannot reasonably be characterized as anything other than knowing and unreasonable conduct. The district court committed a clear error in judgment when it

disregarded the administrator's misconduct by failing to maintain a legally sufficient form.

**B. The Prejudice Suffered By Plaintiff Is Substantial.**

Although a showing of prejudice by the beneficiary is not necessary to impose a penalty under Sec. 1132(c), the prejudice suffered by Plaintiff is extreme and requires a substantial penalty.

Plaintiff has endured the frustration and grief of incurring medical expenses for his daughter's life-threatening illness, in the amount of over $116,000, which is far beyond his means to pay, without the comfort of insurance coverage to which he was entitled. Plaintiff has been forced to hire an attorney and undergo the expense, time, effort, and frustration of litigation in order to obtain the benefits to which he was entitled under the health plan. He has gone without payment of benefits for approximately 5 years.

Although the district court found such prejudice to exist, and found it to be a sufficient basis on which to impose a penalty, it inexplicably failed to do so. Order, p. 4, Add., p. 12. Instead it seemed to require bad faith to justify an award based on prejudice. Id. The

district court confused discretion with arbitrariness when it failed to explain why this relevant factor does not result in a penalty.

As a result, it was error for the Court to fail to impose a statutory penalty for the extreme prejudice suffered by the Plaintiff.

**C. A Statutory Penalty is Necessary To Insure Future Compliance with ERISA and COBRA.**

The district court ruled that a penalty is not necessary as punishment for Defendant's failure to comply with Section 1166(a)(4). Finding, p. 7, Add., p. 7. This finding of fact is contrary to the evidence, or at best, unsupported by the evidence. More importantly, "necessity of punishment" is not one of the two factors that the appellate decisions have found relevant to penalty assessment. Kerr, supra.

However, even if "necessity of punishment" is subsumed in the conduct factor, Defendant Masanz has not shown (1) that her conduct toward the Plaintiff was an isolated incident, (2) that she does not treat all of the beneficiaries and inquiring government agencies with similar disregard for the truth, (3) that she realizes the importance of record-keeping as a duty under ERISA, (4) that she realizes that she is a fiduciary for beneficiaries under ERISA, (5) that she has changed her procedures for keeping track of COBRA notice mailing, (6) that she has

changed her COBRA form to conform to the law, (7) that she doesn't intend in the future to put beneficiaries through bad faith litigation tactics by false court testimony, or (8) that a substantial penalty is not necessary to assure future compliance with ERISA.

As a result, the district court exercised a clear error in judgment when it refused to impose a substantial penalty on the plan administrator, Defendant Masanz. This Court needs to send a clear message to the district court that the plan administrator's conduct requires a substantial penalty, in order to prevent the penalty factors from becoming irrelevant.

## II. The District Court's Refusal To Award Attorney's Fees To The Prevailing Plaintiff Is An Abuse Of Discretion.

The Plaintiff's attorney's fees are recoverable under 29 U.S.C. Sec. 1132 (g) (2000):

> (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

ERISA is remedial legislation which should be liberally construed to effectuate Congressional intent to protect employee participants in employee benefit plans. McGee v. Funderburg, 17 F.3d 1122, 1124 (8th

Cir. 1994). A district court has discretion to award attorneys' fees under ERISA. Sheehan v. Guardian Life Ins. Co., 372 F.3d 962, 968 (8th Cir.2004). A district court considering a motion for attorney's fees under ERISA should apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts. Welsh v. Burlington Northern, Inc., 54 F.3d 1331, 1342 (8th Cir. 1995).

In actions under ERISA this Court applies a five-factor test set forth in Lawrence v. Westerhaus, 749 F.2d 494, 495-96 (8th Cir. 1984) to determine whether to award attorney's fees:

> (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

Martin v. Arkansas Blue Cross/Shield, 299 F.3d 966, 969 (8th Cir. 2002).

Specific findings on each of the Weyerhaus factors is not necessary:

> However, we caution the "five factors" set forth by Westerhaus are by no means exclusive or to be mechanically

> applied. . . . Instead, the district courts should use the factors and other relevant considerations as general guidelines for determining when a fee is appropriate.
>
> * * *
>
> Indeed, **Martin admitted at oral argument that few, if any, fee awards have been denied a prevailing plaintiff in ERISA cases nationwide. This is true even though nine of the circuit courts of appeals do not employ any kind of presumption in favor of fees. Thus, the absence of a presumption has obviously not doomed ERISA plaintiffs' attorney fee requests, and will not do so in this circuit either**.

Id., at p. 972 (Emphasis added).

This Court uses a lodestar method for determining the amount of an attorney's fee award. Geissal ex rel. Estate of Geissal v. Moore, 338 F.3d 926, 935 (8th Cir. 2003), citing Hensley v. Eckert, 461 U.S. 424 (1983).

Plaintiff moved the district court for attorney's fees in the amount of $47,425. Motion for Attorney's Fees, App., 376-392. The district court denied the motion in its entirety, holding that the only Weyerhaus factor that substantially favored the plaintiff was the ability of the opposing party to pay attorney's fees. Order, Add., p. 13. The district court's consideration of the Weyerhaus factors displayed clear errors in judgment.

**A. The Defendants' Conduct Both With Respect to ERISA Duties and This Litigation Was In Bad Faith.**

The first Westerhaus factor, the degree of culpability or bad faith of the opposing party clearly favors the award of attorney's fees to the Plaintiff.

Knowing and unreasonable conduct constitutes bad faith for purposes of justifying an award of attorneys' fees under the American rule. U.S. for Use of Yonker Const. Co. v. Western Contracting Corp., 935 F.2d 936, 942 (8th Cir. 1991). "Attorney's fees can be awarded if the bad faith (1) occurred in connection with the litigation, or (2) was an aspect of the conduct giving rise to the lawsuit." U.S. S.E.C. v. Zahareas, 374 F.3d 624, 627 (8th Cir. 2004). Bad faith may occur during either contract performance or litigation. Yonker Const. Co., supra.

The record is replete with undisputed instances of knowing and unreasonable conduct by the plan administrator and the employer with respect to (1) the unexplained failure to send the COBRA notice and interference by the employer with the plan administrator's records, (2) their recordkeeping failures, (3) false trial testimony, (4) misrepresentation of plan records to the beneficiary, (5) misrepresentations of plan records to investigating government

agencies and to others for the purpose of defeating coverage, and (6) their erroneous COBRA notice form. See supra, Section I.A.

The defendants' conduct can only be described as knowing, unreasonable, culpable, inexcusable, and a serious breach of fiduciary duty. The district court's analysis of this factor represents a clear error in judgment.

**B. Defendants Are Able To Pay the Plaintiff's Attorney's Fees.**

The second Westerhaus factor, the ability of the opposing party to pay attorney fees, favors the award of attorney's fees to the Plaintiff.

The district court found that defendants have the ability to pay the plaintiff's attorney fees and the finding is supported by the evidence. Order, p. 3, Add. p. 15.

**C. An Award Of Attorney's Fees Will Have a Deterrent Effect.**

The third Westerhaus factor, whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances, clearly favors the award of attorney's fees to the Plaintiff. Clearly, the defendants need to change their standard practices to bring them into conformance with ERISA and COBRA, both with respect to documenting the mailing, as well as correctly stating

COBRA rights in the notice itself. An award of attorney's fees will have the effect of changing the Defendants' practices.

The district court found that this factor favored the plaintiff. Order, p. 3, Add., p. 15. However, it held that because the failures of the defendants were not bad faith or willful, this factor was entitled to slight weight. This represents a clear error in judgment by the district court.

Putting aside that there are clear and undisputed instances of knowing and unreasonable conduct by the defendants, the degree of willfulness or negligence is not a part of this factor -- only the deterrence of that conduct by an award of attorney's fees. Even if the defendants' conduct in this case were merely negligent, the deterrence of that conduct in the future will certainly be accomplished by an award of attorney's fees. This factor clearly favors the award of fees.

**D. Plaintiff Has Sought To Benefit All Plan Participants.**

The fourth Westerhaus factor, whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself, favors the award of attorney's fees to the Plaintiff.

Plaintiff has maintained from the beginning of this litigation that the Defendants' COBRA notice form is insufficient to allow a beneficiary to make an intelligent decision as to continuation. See Plaintiff's Motion For Summary Judgment, pp. 19-24, App., pp. 31-41.

This litigation has shone the light of day on the inadequacy of Defendants' ERISA-mandated recordkeeping, as well as the inadequacy of Defendants' COBRA notice itself. All plan participants will benefit from the Plaintiff's success.

In addition, the Plaintiff's success will deter future bad faith litigation tactics by the Defendants, which will be benefit all plan participants.

**E. Defendants' Position Was Without Merit.**

The fifth Westerhaus factor, the relative merits of the parties' positions, clearly favors the award of attorney's fees to a prevailing plaintiff. "The relative merits of the parties' positions are determined, in the final analysis, [by] the result obtained by the plaintiff." Welch, supra, at p. 1343 (quoting Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 590 (9th Cir. 1984).

Plaintiff succeeded on the merits of this action on all of the issues

that were ruled upon by the Court, except for imposition of penalty and award of attorney's fees, which are the subject of these appeals. Defendants did not succeed on any issue relating to COBRA compliance.

Defendants have known about Masanz' lack of memory of mailing of the COBRA notice and lack of record of mailing early on in this litigation, since at least February 12, 2002, when her deposition was taken. Yet, Defendants continued with this litigation and even proffered false testimony about Masanz' recollection of mailing during her direct examination at trial, and again on her redirect examination. In fact, defendants continued to assert in post trial submissions that the evidence on the issue of mailing was in their favor: "[The] evidence quite clearly established that Defendants met their statutory legal obligation to send a COBRA notice to Plaintiff." Defendants' Memorandum in Response to Plaintiff's Findings of Fact, p. 3, App., p. 334.

The district court's conclusion that this fifth Westerhaus factor did not favor either party because defendants were able to survive a motion for summary judgment represents clear error in judgment because it does not consider the prevailing party. Moreover, the district court's

reasoning does not withstand even minimal scrutiny. The reason that defendants were able to survive summary judgment was twofold: First, defendant Masanz testified falsely at her deposition about her recollection of mailing the COBRA notice, and second, the district court ruled incorrectly that a reasonable fact-finder could find that the claimed COBRA notice was sufficient. Defendant's testimonial misconduct and the district court's error at the summary judgment stage only serve to substantiate that plaintiff's position was meritorious. Following the district court's reasoning, virtually no case that results in a trial on the merits could qualify for an award of attorney's fees. That would be an absurd result and contrary to the law of this circuit.

On this factor alone, the lack of merit in Defendants' litigation position and the excellent results obtained by the Plaintiff favor an award of attorney's fees.

## CONCLUSION

The plaintiff respectfully requests that the district court's judgment be reversed with clear instructions to impose a substantial penalty on the plan administrator and award reasonable attorney's fees.

Dated: February , 2006.

Respectfully submitted,

s/ Robert J. Bruno

Robert J. Bruno
Attorney Reg. No. 12415
ROBERT J. BRUNO, LTD.
1601 E. Highway 13, #107
Burnsville, MN 55337
952-890-9171

Attorney for Appellant

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that the Brief of Appellant is proportionately spaced, has a typeface of 14 points or more and contains 9,612 words of text according to Microsoft Word 2002's word count function.

Dated: February , 2006.

______________________________

Robert J. Bruno
ROBERT J. BRUNO, LTD.
1601 East Highway 13, #107
Burnsville, Minnesota 55337
Tel: (952) 890-9171

Attorney for Appellant